**Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**ARNOLD BROTHERS COTTON GIN CO., Inc., Appellee.**

**No. 19011.**

United States Court of Appeals
Fifth Circuit.

Jan. 2, 1962.

Earl Street, Regional Atty., U. S. Dept. of Labor, Dallas, Tex., Bessie Margolin, Morton Liftin, Asst. Sols., U. S. Dept. of Labor, Charles Donahue, Sol., U. S. Dept. of Labor, Jacob I. Karro, Jack H. Weiner, Attys., U. S. Dept. of Labor, Washington, D. C., for appellant.

Roby Hadden, Fred Hull, Tyler, Tex., for appellee.

Before BROWN, WISDOM and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

This is an appeal by the Secretary of Labor from an adverse judgment in an action brought under Section 16(c) of the Fair Labor Standards Act[1] to recover unpaid minimum wages for the years 1958 and 1959 on behalf of named claimants.

---

1. Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended by the Fair Labor Standards Amendments of 1949, c. 736, 63 Stat. 910, 29 U.S.C.A. § 201 et seq.

Appellee owned and operated a cotton gin at Lovelady, Texas during these years and claimants were employed in the operation of the gin during ginning season.[2]

The District Court agreed that claimants were paid less than the minimum rates required by the Act and that the cottonseed produced at the gin in 1958 was for interstate commerce within the meaning of the Act and awarded back pay for that year. However, the court held that the evidence was insufficient to establish that claimants were engaged in the production of goods for interstate commerce during 1959, and this holding is the sole issue on appeal. Appellee gin company filed no cross-appeal from the adverse judgment as to claims arising during 1958.

Appellee is a corporation wholly owned by D. H. Arnold except for two qualifying shares owned by others, one of whom is L. H. Arnold, his father, the corporation president. Arnold Cotton Company is a partnership, owned by the father and son. Houston County Compress Company is a corporation owned by D. H. Arnold and L. H. Arnold had a "working interest" in it. These latter companies are located in Croxton, Texas, some fourteen miles from Lovelady. The gin company processes raw cotton owned by local farmers into cotton and cottonseed. The cotton is picked up for the farmer owners at the gin by the compress company and is shipped to destinations specified by the respective owners.

According to L. H. Arnold a good percentage of it went to Galveston and Houston and he "imagined" that some of it was shipped outside the United States. He was sure that a large percentage of the cotton ginned in Texas is shipped outside the state. Appellee admitted in response to interrogatories that it was probable some of the cotton was eventually sent to places outside of Texas, although the cotton was not ginned for the specific purpose of interstate shipment.

Some of the cottonseed produced during the years in question was retained by the farmers for feed, and as planting seed. The balance was purchased by Arnold Cotton Company, the partnership, and in turn sold in the early months of the following year, the 1958 seed being sold in early 1959 and the 1959 seed in early 1960. It was undisputed that the 1958 seed was sold by the partnership to Southland Cotton Oil Company in early 1959 and that Southland processed the seed into cottonseed products for shipment in substantial amounts outside the State of Texas. This was the basis for the conclusion of the court that in the 1958 season the employees were engaged in the production of goods for interstate commerce within the meaning of the Act.

The complaint as originally filed was based on cotton being produced for interstate commerce. The complaint was amended, on the basis of responses to interrogatories of appellant, to include cottonseed as being produced for interstate commerce. The case was tried on the theory of cottonseed being the goods produced for interstate commerce, but it does not appear that cotton was abandoned as a basis.

On the trial, L. H. Arnold testified that the 1958 seed produced by the gin company was sold to Southland in early 1959. He was then asked whether any of the 1959 seed was sold to Southland and he responded:

"I don't—I don't recall having sold any. I think all of our seeds were milled by the Marlin Oil Mill."

He was followed on the stand by the manager of Southland who testified that his company purchased 209,880 pounds of cottonseed from Arnold Cotton Company on January 30, 1959 and 290,140 pounds on March 11, 1960, but he did

2. There were five claimants, three of whom were employed during both seasons. One was employed only during 1958 and another only during 1959.

not know where or from whom Arnold Cotton Company acquired the seed.

The agreement between the Arnold Cotton Company and Marlin Oil Company was in evidence and was dated March 9, 1960. It contemplated the milling of cottonseed and set out various prices and processes but did not specify the amount, if any, of seed to be processed and the record is silent as to what amount, if any, was processed under the contract.

L. H. Arnold again testified as did D. H. Arnold but not as to the disposition of the 1959 seed actually produced by appellee, or as to the source of the seed sold by Arnold Cotton Company to Southland in 1960. Neither denied the sale to Southland.

■■ The basis of the holding of the court that claimants were engaged in the production of cottonseed for interstate commerce during the 1958 ginning season was the production of seed at the gin, the purchase of these seed by the partnership, Arnold Cotton Company, from the farmers owning the seed, the sale of the seed to Southland and the distribution into interstate commerce by Southland of a substantial portion of the end products of the seed. Appellant contends, and rightly so, that the proof regarding the 1959 cottonseed produced by appellee in view of the evidence and the reasonable inference therefrom was such as made a prima facie showing of production for interstate commerce. Contrasted with the facts surrounding the 1958 cottonseed, there were no substantial differences other than one gap and the inference suffices to close it. The gap in the proof was the source of the seed to seller, Arnold Cotton Company. Did the seed come from the gin of appellee as did the 1958 seed, or from a different source? The facts to show a different source, if a different source could in fact be shown, were in the possession of the Arnolds, owners of both appellee and the seller of the seed to Southland. They had the burden at this point of going forward with the evidence. Foremost Dairies, Inc. v. Ivey, 5 Cir., 1953, 204 F.2d 186. Cf. Selma, Rome & Dalton R. Co. v. United States, 1891, 139 U.S. 560, 11 S.Ct. 638, 35 L.Ed. 266. We are not concerned with the clearly erroneous rule, F.R.Civ. P. 52(a), 28 U.S.C.A., but with a misconception of the legal standard to be followed as to proof. Mitchell v. Mitchell Truck Line, Inc., 5 Cir., 1961, 286 F. 2d 721.

Appellant having thus made out a prima facie case, the District Court erred in holding that the evidence failed to establish that appellee was engaged in the production of goods for interstate commerce during the 1959 cotton ginning season within the meaning of the Act. It may be that none of the seed produced at the gin of appellee during the 1959 season were sold to Southland but based on the evidence adduced upon the trial appellee had the burden of going forward with the proof to establish this fact and will have an opportunity to do so upon a retrial.

■ Appellant also urges that the proof was sufficient to establish that the cotton was produced for interstate commerce, particularly if the court would take judicial notice of certain documents and data regarding the distribution of Texas cotton. It is well established that in a case of this kind it is not necessary for appellant to trace the cotton actually into interstate commerce if appellee expected the cotton to move in interstate commerce. United States v. Darby, 1940, 312 U.S. 100, 118, 61 S.Ct. 451, 85 L.Ed. 609; and Warren-Bradshaw Drilling Co. v. Hall, 1942, 317 U.S. 88, 92, 63 S.Ct. 125, 87 L.Ed. 83. It is sufficient if the trier of the facts may reasonably infer that the employer had grounds to anticipate that his products would move interstate. D. A. Schulte, Inc. v. Gangi, 1946, 328 U.S. 108, 121, 66 S.Ct. 925, 90 L.Ed. 1114. Here however, it must be borne in mind that the findings of fact and conclusions of law were filed by the court on February 14, 1961 and not until February 23, 1961, when appellant

moved for additional findings of fact and conclusions of law, was judicial notice urged in aid of proof as to the interstate movement of the cotton in question. The cotton had been relegated to a position of unimportance during the trial. It may be that on a new trial where the nature of the movement of the cotton as well as the cottonseed is considered of prime importance, the court will take judicial notice of data and documents asserted by appellant to establish the interstate movement of cotton in Texas and that this will lighten the burden of appellant in showing production at appellee's gin of goods for interstate commerce, such notice being subject of course to the admonition of caution that the matter noticed be of general knowledge and authoritatively settled. Brown v. Piper, 1875, 91 U.S. 37, 23 L.Ed. 200.

The portion of the judgment appealed from is reversed for further proceedings not inconsistent herewith.