**W. I. BOWMAN, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE and Orville Freeman, as Secretary of Agriculture, and United States of America, Respondents.**

**No. 22001.**

United States Court of Appeals
Fifth Circuit.
July 1, 1966.

See also 5 Cir., 352 F.2d 281.

82

Robert E. Varner and Jones, Murray & Stewart, Montgomery, Ala., for petitioner.

Neil Brooks, Asst. Gen. Counsel, Dept. of Agriculture, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, Atty., Dept. of Justice, Wash-

ington, D. C., Jerome S. Ducrest, Robert E. Duncan, Attys., Dept. of Agriculture, Washington, D. C., for respondents.

Before MARIS,* RIVES, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

Mr. Bowman seeks review of the decision of the Judicial Officer [1] acting for the Secretary of Agriculture entered in a proceeding brought against him under the Packers and Stockyards Act. 7 U.S.C.A. § 181 et seq. The complaint involved the operations of Mr. Bowman, doing business as the Capital Stock Yards in Montgomery, Alabama, the Camden Stock Yards at Camden, Alabama, and the Tri-County Stock Yards at Hurtsboro, Alabama. He was a "stockyard owner", "market agency", and a "dealer" under the Packers and Stockyards Act. 7 U.S.C.A. § 201(a) (c) and (d).[2]

The complaint charged Mr. Bowman with the violations which are the subject matter of this petition for review brought under 5 U.S.C.A. § 1031 et seq.,

and also other charges which were eliminated on the hearing. It was duly answered and the case was then tried before a Hearing Examiner with a result adverse to Mr. Bowman. Exceptions were filed and oral argument was then had before the Judicial Officer on the record made before the Hearing Examiner. The Judicial Officer entered findings of fact, conclusions of law and an order against Mr. Bowman.

In sum, the Judicial Officer found and concluded that Mr. Bowman, in his operations at the three stockyards, had violated the solvency requirements of 7 U.S. C.A. § 204,[3] and had engaged in business practices as a market agency in buying and selling livestock on a commission basis which were violative of §§ 304, 306 (f), 307, 312(a), and 401 of the Packers and Stock Yards Act, 7 U.S.C.A. §§ 205, 207(f), 208, 213(a) and 221,[4] as well as certain regulations promulgated pursuant to the Act.

The Judicial Officer ordered Mr. Bowman to cease and desist from operating as a market agency while his current liabilities exceed his current assets; using

---

* Of the Third Circuit, sitting by designation.

1. The Judicial Officer acted for the Secretary of Agriculture pursuant to authority delegated under 5 U.S.C.A. § 516a et seq., as embraced in orders appearing in 10 F.R. 13769; 11 F.R. 177A–233; 18 F.R. 3219, 3648; 19 F.R. 74. The decision in this proceeding is reported under the name and style of In Re W. I. Bowman d/b/a Capital Stock Yards, Camden Stock Yards, and Tri-County Stock Yards, 23 Agr.Dec. 1074–1093.

The United States was added as a respondent by amendment. Bowman v. United States Department of Agriculture, et al., 5 Cir., 1965, 352 F.2d 281.

2. 7 U.S.C.A. § 201:

"When used in this chapter—

"(a) The term 'stockyard owner' means any person engaged in the business of conducting or operating a stockyard;

* * * * *

"(c) The term 'market agency' means any person engaged in the business of (1) buying or selling in commerce livestock on a commission basis or (2) furnishing stockyard services; and

"(d) The term 'dealer' means any person, not a market agency, engaged in the business of buying or selling in commerce livestock, either on his own account or as the employee or agent of the vendor or purchaser."

3. 7 U.S.C.A. § 204:

" * * * whenever, after due notice and hearing, the Secretary finds any registrant is insolvent or has violated any provisions of this chapter he may issue an order suspending such registrant for a reasonable specified period."

4. 7 U.S.C.A. § 205:

"It shall be the duty of every stockyard owner and market agency to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyard: * * *"

7 U.S.C.A. § 207(f):

" * * * no person shall carry on the business of a stockyard owner or market agency unless the rates and charges for the stockyard services furnished * * * have been filed and published in accordance with this section * * * nor charge, demand, or collect a greater or less or different compensation for such services than the

shipper's proceeds for his own purposes, including the extension of credit to customers; issuing accounts of sale to consignors which failed to show the full, true and correct name of the purchaser; issuing scale tickets which failed to show the date of the weighing, name or initials of the weigher, and the true and correct name of the purchaser of the livestock; financing the operations of an independent and separately registered dealer; and failing to charge and collect the charges specified in his rate schedule on file with the Secretary in connection with his purchase operations. The order of the Judicial Officer also prescribed the manner in which Mr. Bowman is to maintain custodial bank accounts. He was suspended as a registrant under the Act for a period of thirty days because of his handling of custodial accounts, and thereafter until he demonstrates that he is solvent. His operation of a stockyard in Demopolis, Alabama was excepted from the suspension, but a new venture, commenced subsequent to the complaint under the name of Bowman Order Buyers, was included.

The petition for review and the supporting briefs assert, in rather a scattergun fashion, alleged errors based on an insufficiency of evidence, vagueness of statutes and regulations, regulations promulgated without statutory authority, and an absence of due process because of the purported diminution of the ability of the Hearing Examiner and the Ju-

dicial Officer to act fairly in view of a press release by the Secretary disclosing that the complaint in question had been filed. We affirm.

## I.

We take up first the question of insolvency. The evidence established a prima facie case that petitioner was insolvent in his operations on the dates in question within the meaning of 7 U.S. C.A. § 204, as the Secretary defines insolvency, which is that his current liabilities exceeded his current assets. The Secretary deems this to be the test of insolvency under the statute rather than measuring total assets against total liabilities.

■ The statute, § 204, contains no definition of solvency. The Secretary has used the test of current assets as against current liabilities for many years. See In re Southern Buyers, Inc., 1955, 14 Agr.Dec. 811; and In re John L. Cooper, et al. d/b/a Cooper Commission Co., 1960, 19 Agr.Dec. 160. And courts generally give great weight to the construction consistently given to a statute by the Executive Department charged with its administration. See United States v. Jackson, 1929, 280 U.S. 183, 193, 50 S.Ct. 143, 74 L.Ed. 361; and Federal Maritime Board v. Isbrandtsen Co., Inc., 1958, 356 U.S. 481, 499, 78 S.Ct. 851, 2 L.Ed.2d 926.

■ The question posed is whether the test for insolvency used by the Secre-

rates and charges specified in the schedules filed and in effect at the time; nor refund or remit in any manner any portion of the rates or charges so specified * * * nor extend to any person at such stockyard any stockyard services except such as are specified in such schedules."

7 U.S.C.A. § 208:
"It shall be the duty of every stockyard owner and market agency to establish, observe, and enforce just, reasonable, and nondiscriminatory regulations and practices in respect to the furnishing of stockyard services * *"

7 U.S.C.A. § 213(a):
"It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, un-

justly discriminatory, or deceptive practice or device in connection with [the] receiving, marketing, buying, or selling on a commission basis or otherwise * * * of livestock."

7 U.S.C.A. § 221:
"Every * * * stockyard owner, market agency, and dealer shall keep such accounts, records, and memoranda as fully and correctly disclose all transactions involved in his business * *. Whenever the Secretary finds that the accounts, records, and memoranda of any such person do not fully and correctly disclose all transactions involved in his business, the Secretary may prescribe the manner and form in which such accounts, records, and memoranda shall be kept * * *"

tary is an allowable one. The Packers and Stock Yard Act is remedial legislation. Stafford v. Wallace, 1921, 258 U.S. 495, 521, 42 S.Ct. 397, 66 L.Ed. 735, and it should be construed liberally so as to effectuate the purpose of Congress. One of the purposes of the Act was to insure the proper handling of shipper's funds and their proper transmission to the shipper. United States v. Donahue Bros., Inc., 8 Cir., 1932, 59 F.2d 1019. This would include prompt payment. Failure to pay would be a proscribed deceptive practice under § 213(a), supra. And the Act is designed to " * * * prevent potential injury by stopping unlawful practices in their incipiency. Proof of a particular injury is not required." Daniels v. United States, 7 Cir., 1957, 242 F.2d 39, 42.

■■ Having in mind the remedial purposes of the Act, we hold that the test used for determining solvency or insolvency under the circumstances here was reasonable. A financial status where current assets exceed current liabilities would be the *sine qua non* of prompt payment. We also hold that the evidence supports the finding of insolvency.

The bone of contention between the parties on the insolvency question represented a difference of opinion as to the appropriate classification of certain assets and liabilities. The auditor for the Secretary took the position that certain brood cattle, stocks and bonds, the cash value of life insurance, a mailing permit deposit, and insurance claims should not be classified as current assets and that certain notes and interest payable should be classified as current liabilities. Under such a classification, current liabilities would exceed current assets. We do not believe the position taken by the auditor was improper in this respect. The assets in question were not held with the expectation of immediate conversion.

■ In addition, Mr. Bowman strenuously urges that many of his valuable assets were ignored. It may well be that he is not insolvent, and that he does have many valuable assets over and above those considered in this proceeding but the burden was on him to come forward after the Secretary made out a prima facie case. The knowledge as to additional assets was peculiarly his. Goldberg v. Arnold Brothers Cotton Gin Company, Inc., 5 Cir., 1962, 297 F.2d 520.

We may add that the Judicial Officer recognized that Mr. Bowman might have been able. to show solvency at the time of his decision. He noted that subsequent to the proceeding before the Hearing Examiner, he had sold his interest in the Capital Stock Yards and the Camden Stockyards, a large note had been paid, and some short term obligations had been changed to long term obligations. He stated however, that Mr. Bowman, although afforded the opportunity to do so, had not attempted to demonstrate his present solvency. The Judicial Officer went on to point out that upon a showing of solvency the order would be modified accordingly.

## II.

■ With respect to the other business practices which were held to violate the Act, the custodial account departures are the most serious. These departures were the basis for the sixty days suspension under § 204. We begin with the proposition that the custodial account was to contain funds which Mr. Bowman received from the sale of livestock which had been consigned to the stockyards for sale on a commission basis. Three such accounts were maintained. These were fiduciary accounts. United States v. Donahue Bros., Inc., supra. The administrative regulations, 9 CFR 201.40, 201.42(a), which are neither vague in terms or lacking in a statutory base, §§ 213(a), 221, provide:

§ 201.40
"No market agency * * * engaged in selling or buying livestock * * * on a commission or agency basis shall use shippers' proceeds or funds received for the purchase of livestock * * * for purposes of its own

either through recourse to the so-called 'float' in the bank account in which the proceeds or funds are deposited or in any other manner."

§ 201.42(a)

"Every market agency and licensee shall deposit the gross proceeds received from the sale of livestock * * handled on a commission or agency basis in a separate bank account designated as 'Custodial Account for Shippers' Proceeds,' or by a similar identifying designation. Such account shall be drawn on only for payment of the net proceeds to the consignor or shipper, or such other person or persons who such market agency or licensee has knowledge is entitled thereto, and to obtain therefrom the sums due the market agency or licensee as compensation for its services, and for such sums as are necessary to pay all legal charges against the consignment of livestock * * * which the market agency or licensee may, in its capacity as agent, be required to pay for on behalf of the consignor or shipper. * * * "

Mr. Bowman was charged with a similar violation in 1951. At that time he agreed and stipulated that he would maintain a custodial account in which he would deposit proceeds from the sale of livestock on a commission basis, and would draw on such custodial account only to pay lawful marketing charges and shippers of livestock. Notwithstanding this stipulation, it was later found that he had again used shipper proceeds for purposes of his own, and for purposes other than the payment of lawful marketing charges and the remittance of net proceeds to shippers. In re W. I. Bowman d/b/a Capital Stock Yards, 1956, 15 Agr.Dec. 828.

 He was ordered then to maintain custodial accounts separate from his own accounts. The evidence is abundant that he has not done so. He used custodial account funds in financing the purchase of cattle by Luther Brackeen, and also in purchasing cattle for himself. He also used custodial account funds to extend credit to persons who purchased livestock from him. His answer is that his own funds were in these custodial accounts and that no one suffered a loss. But these were trust funds. United States v. Donahue Bros., Inc., supra. They were to be kept separate from his own, and it was a part of his duty in performing stockyard services to properly handle and use shipper proceeds. Daniels v. United States, supra. Moreover, he had stipulated that he would not so use the custodial account funds, and he was also under an order not to do so. 15 Agr.Dec. 828, supra. The findings and conclusions of the Judicial Officer concerning the custodial accounts and Mr. Bowman's conduct with respect thereto, and the order based thereon are fully warranted in fact and in law, and are entitled to stand.

### III.

 We have carefully considered the other errors asserted. The evidence is sufficient to show that certain persons were not charged the correct and prescribed commissions for stockyards services, relevant facts concerning the sale of consignor's livestock were not reported to the consignors in every instance, and that some of the records which Mr. Bowman was required to maintain in his stockyard operations were incorrect and incomplete. It would serve no useful purpose to set out these deficiencies in detail.

The petition for review is denied in all respects. The evidence is sufficient in every instance. The standard of solvency used by the Secretary was proper, and we find no shortcoming in either the statutes or regulations which are the subject matter of this controversy. Lastly, the contention that the press release in some manner denied petitioner due process of law in that it prevented the Hearing Examiner and the Judicial Officer from acting fairly in the premises is frivolous.

Denied.