The TRAVELERS INDEMNITY COMPA-
NY and the First National Bank of
Hereford, Plaintiffs-Appellees,

v.

MANLEY CATTLE COMPANY et al.,
Defendants-Third-Party
Plaintiffs-Appellees.

Hugh T. WATSON et al., Defendants,

v.

Arvel L. BAKER, etc., Third-Party
Defendant.

W. C. MARSH et al.,
Intervenors-Appellees,

v.

PRODUCERS GRAIN CORPORATION,
Intervenor-Appellant.

No. 76–1016.

United States Court of Appeals,
Fifth Circuit.

June 10, 1977.

Rehearing Denied July 11, 1977.

Don M. Dean, Amarillo, Tex., for appel-
lant.

D. Wesley Gulley, Hereford, Tex., for The
Travelers Ind. Co., et al.

B. Patrick Shaw, Dallas, Tex., for Manley
Cattle, etc.

L. D. McCleskey, Jr., pro se and for W. C.
Marsh, et al.

Don H. Reavis, Amarillo, Tex., for Wat-
son Cattle Co.

Charles F. Aycock, Farwell, Tex., for
Horney Livestock, Inc.

Before GODBOLD and CLARK, Circuit Judges, and HOFFMAN *, District Judge.

CHARLES CLARK, Circuit Judge:

Arvel L. Baker, d/b/a Art Baker Cattle Company, was registered as a dealer in livestock under the Packers and Stockyards Act. 7 U.S.C. §§ 201 et seq.[1] In connection with this registration, Baker posted a bond in which Travelers Indemnity Company was surety and a certificate of deposit in the First National Bank of Hereford, Texas. The condition of the bond, expressed in the words of the implementing regulation,[2] was:

> (2) If the said Principal shall pay when due to the person or persons entitled thereto the purchase price of all livestock purchased by said Principal for his own account or for the accounts of others, and if the said Principal shall safely keep and properly disburse all funds, if any, which come into his hands for the purpose of paying for livestock purchased for the accounts of others

Applicable if Principal BUYS on commission or as a dealer.

In the course of his business as a registered dealer, Baker bought cattle for his own account from Manley Cattle Company, Alvin Cummins d/b/a Cummins Cattle Company, Hugh T. Watson d/b/a Watson Cattle Company, Horney Livestock, Inc., and Southeastern Cattle Company. The purchase price for these lots of cattle remains unpaid, and no challenge is made to the right of these sellers to a proportionate share of the protection of Baker's bond and certificate of deposit.[3] Rather, the appeal focuses on whether the following events give participation rights to another.

Baker purchased cattle from other producers in separate transactions and paid their purchase price. He then sold these cattle to Equity Grazers, Inc. Contemporaneously with his sale to Equity, Baker entered into a contract with it under which he was to feed and treat these cattle until such time as Equity was ready to sell. Baker retained an option to purchase the cattle; this right was conditioned on Baker's agreement to place the cattle under a feeding agreement with Producers Grain Corporation. The agreement between Baker and Equity was also executed by Producers and was assigned to Producers at the time of execution. Producers guaranteed Equity's note at a bank which lent it the funds to make the purchase from Baker. When Equity resold the cattle to Baker, the purchase funds were loaned to Baker by Producers. Pursuant to Baker's contractual commitment, the cattle were placed in a feed lot operated by Producers. The cattle market declined during the course of these dealings, and although the cattle sold for more than the amount of the Equity purchase money which Producers advanced to Baker, they did not bring enough to repay this amount plus the cost of feed. Producers controlled the sale and applied the funds to payment of its feed bills before crediting any part against Baker's borrowing.

Baker became insolvent and Travelers Indemnity Company and the First National Bank of Hereford interpled the amounts of their respective obligations. Claims for pro rata participation in these interpleader funds were advanced by Producers and by the various sellers first named. The district court denied Producers any right to participate in the interpleader proceeds on the ground that it could not properly apply the sales proceeds to the feed account before satisfying Bakers purchase obligation. We affirm this action of the trial court but without reaching the ground upon which it was based.

---

* Senior District Judge of the Eastern District of Virginia sitting by designation.

1. The term "dealer" means any person who buys or sells livestock in commerce for his own account, rather than on a commission. See 7 U.S.C. § 201(c), (d).

2. 9 C.F.R. § 201.27. The specific statute on bond requirements is 7 U.S.C. § 204.

3. Southeastern accepted a note from Baker covering the adjusted price of its sale. The district court refused to distinguish this arrangement from the remaining open accounts for purposes of this litigation. That issue was not appealed.

■ Baker's tricorn transactions with Equity and Producers involved the purchase of cattle from growers; a sale, feeding, and buy-back arrangement with Equity; and financing and final finishing agreements by Producers. The underlying purposes of the complex contractual undertakings between these parties are obscure. However, the ultimate realities are apparent enough to permit sure resolution of this appeal. Baker purchased cattle from individual growers for his own account, and then recovered the use of all or part of his purchase funds during the period the cattle were being readied for the fat cattle market. Producers at all times owned such right, title, and interest as Equity ever acquired in Baker's cattle. Thus the purchase by Equity, the resale to Baker, and the financing by Producers were paper formalities which enabled Baker to secure financing and enabled Producers to sell the feedstuff used to fatten the cattle. These are not the types of transactions intended to be secured by the bond required of registered dealers under the Packers and Stockyard Act and its implementing regulations.

■ The purpose of the bond requirement in the original enactment of the Packers and Stockyards Act, Act of Aug. 15, 1921, ch. 64, § 1, 42 Stat. 159 (1921), was to safeguard the farmers and ranchers who produce cattle against the losses they would suffer if they sold their livestock to insolvent or defaulting purchasers.[4] By building confidence in the financial stability of dealers, the Act intended to stabilize and encourage the production of beef and other livestock.[5] The 1958 amendments did not change this concept of protection. Their only significance to the present action was to broaden the locations at which purchases would be protected in order to keep abreast of modern buying practices.[6] The Act now covers not only sales "at stockyards," but also country buying and purchases at auction markets of all sizes.

■ We recognize that the Act is remedial legislation entitled to liberal construction to effectuate its purposes.[7] The problem for coverage of the transactions between Baker, Equity, and Producers is that not even the most liberal view of the enactment discloses any intent to protect such a financing-feeding arrangement.

Baker's bond, by its terms, assured payment of the price of cattle purchased by Baker as a dealer for his own account. Baker had bought and paid for the cattle involved in this transaction and the growers who made these original sales are not claimants. Hence, any potential bond obligation as to the purchase price of this lot of livestock had been effectively discharged and the purposes of the Act to secure the purchase transaction from the farmers and ranchers who had produced the cattle had been fulfilled. Casting the form of the subsequent contractual commitments with Equity and Producers as a sale to Equity and a second purchase by Baker did not constitute Baker a buyer from himself, or from Equity, within the purview of the Act, nor was Baker performing a "buying obligation" within the meaning of the implementing regulations.[8]

The judgment appealed from is

AFFIRMED.

---

4. [1958] U.S. Code Cong. & Ad. News, p. 5213.

5. See *United States v. Wehrheim*, 332 F.2d 469 (8th Cir. 1964); *Arnold Livestock Sales Co. v. Pearson*, 383 F.Supp. 1319 (D.Neb.1974).

6. [1958] U.S. Code Cong. & Ad. News, pp. 5215, 5216.

7. *Bowman v. United States Dep't of Agriculture*, 363 F.2d 81 (5th Cir. 1966).

8. 9 C.F.R. § 201.29(b) (1976) provides:

Every . . . dealer buying for his own account or for the accounts of others shall file and maintain a bond to secure the performance of his buying obligations . . . ..