**Dale VAN WYK and Van's Livestock, Inc., Petitioners,**

v.

**Robert BERGLAND, Secretary of Agriculture, Respondent.**

No. 77–1303.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1978.

Decided Feb. 1, 1978.

Rehearing Denied Feb. 22, 1978.

John H. Neiman and Thomas G. McCuskey of Neiman, Neiman, Stone & Spellman, Des Moines, Iowa, on brief, for petitioners.

Sarah Weddington, Gen. Counsel and Rodney J. Streff, Atty., U. S. Dept. of Agriculture, Washington, D. C., Barbara Allen Babcock, Asst. Atty. Gen., Ronald R. Glancz and Allen H. Sachsel, Attys., Civ. Div., App. Sec., Dept. of Justice, Washington, D. C., on brief, for respondent.

Before MATTHES, Senior Circuit Judge, ROSS and HENLEY, Circuit Judges.

MATTHES, Senior Circuit Judge.

This litigation was commenced on February 13, 1974. On that date the Administrator, Packers and Stockyards Administration, filed a complaint against Mid-States Livestock, Inc., Gordon Reisinger, president of Mid-States, and Dale E. Van Wyk, secretary-treasurer of Mid-States, who were designated as respondents. The complaint alleged, *inter alia*, that Mid-States was a corporation under the direction, control, and management of the above-named corporate officers; that Mid-States, Reisinger, and Van Wyk engaged in the business of buying and selling livestock in commerce; and that the corporation and the individual respondents had registered with the Secretary of Agriculture as dealers to buy and sell livestock in commerce and as market agencies to buy livestock in commerce on commission. The complaint further alleged that all three respondents willfully violated (1) the provisions of the Packers and Stockyards Act of 1921, as amended and supplemented, 7 U.S.C. § 181 *et seq.*, by engaging in unfair or deceptive practices or devices, and (2) the regulations promulgated under the Act by the Secretary of Agriculture, 9 C.F.R. § 201.1 *et seq.*, by failing to make sufficient funds available for the payment

of drafts and checks issued for the purchase of livestock.

Mid-States did not contest the complaint, waived oral hearing, and consented to an order based on the allegations of the complaint. Van Wyk filed an answer denying, in effect, that he had violated the Act.

In due time, hearings were conducted by The Honorable John H. Campbell, Chief Administrative Law Judge, from October 22, 1974 through October 25, 1974, and from November 19, 1974 through November 21, 1974. Numerous witnesses were heard and many exhibits received into evidence.[1] After weighty consideration and analysis of all of the evidence, the ALJ filed his initial decision and order on November 1, 1976. The exhaustive and detailed findings and conclusions of the ALJ are reported in the Decisions of the Secretary of Agriculture. 35 A.D. 1879 (1976). The ALJ ordered Van Wyk, to the extent that he is a registrant under the Act, and Van's Livestock, Inc., a corporate device and a corporate successor to Mid-States, suspended as registrants for a period of thirty days. *Id.* at 1897.

Van Wyk appealed to the judicial officer to whom final administrative authority to decide Department cases subject to the Administrative Procedure Act has been delegated.

On February 11, 1977, the judicial officer filed his decision and order. 36 A.D. 172 (1977). After taking notice of the contentions of the petitioners in this proceeding, the judicial officer adopted the decision and order of the ALJ "with trivial changes except for the addition of footnotes 8 and 9." *Id.* at 173. Additionally, the judicial officer increased the period of suspension of the registrations of Van Wyk and Van's Livestock, Inc. from thirty to sixty days.

Dale Van Wyk and Van's Livestock, Inc. filed a timely petition in this court to review the order of the Secretary.

The ALJ and judicial officer have, with painstaking care, fully and accurately explicated all relevant evidence and considered the contentions of the petitioners. We need only observe that we have canvassed the voluminous record and have concluded that no rational basis exists on which to interfere with the order of suspension. For the purpose of this opinion, a brief resume of the pertinent evidence will suffice.

Mid-States was primarily engaged in the buying and selling of cattle, both on commission and for its own account. This business proved profitable, but the respondents were not content to devote their full energies and resources to their livestock activities, which were large and expansive. They embarked upon speculating in commodities, and this enterprise led to the collapse and downfall of Mid-States and Reisinger. Van Wyk, who was more affluent financially, also suffered losses. The commodities speculations were profitable until, on Van Wyk's urging, Mid-States changed its commodities position from "short" to "long." As a result, during September of 1973, Mid-States became subject to increased margin calls which Van Wyk and Reisinger agreed to cover with Mid-States' operating monies. Mid-States soon began suffering cash-flow difficulties, but continued to purchase cattle. Efforts to salvage Mid-States' financial position failed, and many of those who had sold livestock to Mid-States during the period were paid either late or not at all.

---

1. Respondent Gordon Reisinger was represented by counsel in the hearings before the administrative law judge. When called as a witness, he invoked the Fifth Amendment to the United States Constitution and refused to testify. The activities of Mid-States, under the control of the two individual respondents, resulted in substantial losses to sellers of livestock, and litigation ensued. In connection with that litigation, Gordon Reisinger's deposition was taken on two occasions subsequent to the hearings in this case before the administrative law judge. The first deposition was taken on the 24th of January, 1975, in Eldora, Hardin County, Iowa. The second deposition was taken in September, 1975, apparently in Leavenworth, Kansas. According to Gordon Reisinger's testimony appearing in the transcript of the September, 1975 deposition, he was then confined to Leavenworth, Kansas, and had received a two-year sentence "for conspiracy, embezzlement, and mortgaging mortgaged property." Deposition of Gordon Reisinger, September, 1975, Vol. II, at 142. By agreement, the depositions of Reisinger were made a part of the record in this proceeding.

Mid-States ceased buying and selling livestock on October 3, 1973.

Shortly after Mid-States' collapse, Van Wyk resumed buying and selling livestock individually and through a corporation, Van's Livestock, Inc., formed by Van Wyk in November of 1973. Van's Livestock, Inc. is owned by Van Wyk and his wife. It is quite similar in operation to Mid-States, employs former Mid-States personnel, utilizes some former Mid-States facilities, and services many of Mid-States' former customers. Both Van Wyk and Van's Livestock, Inc. received substantial operating loans from the bank which Mid-States formerly used. These loans were secured in part by a pledge of Van Wyk's Mid-States' shares.

The ALJ found that the failure of Mid-States to pay for livestock in a timely manner was (1) a willful "unfair . . . or deceptive practice or device" contrary to § 312(a) of the Packers and Stockyards Act, 7 U.S.C. § 213(a),[2] and (2) a violation of § 201.43(b) of the regulations of the Secretary of Agriculture, 9 C.F.R. § 201.43(b).[3] He also concluded that Van's Livestock, Inc. was the corporate successor to Mid-States.

We turn now to the contentions presented for our determination, and in our disposition thereof will elaborate as necessary on the basic and essential facts.

## I

■ Petitioners maintain that the transactions on which this case is predicated involve only debtor/creditor concerns, and do not fall within the regulatory scheme of the Packers and Stockyards Act. We disagree. The numerous cases relied upon by petitioners are readily distinguishable and do not support petitioners' claim that this proceeding has no jurisdictional basis in the Packers and Stockyards Act.

■ One purpose of the Act "is to assure fair trade practices in the livestock marketing . . . industry in order to safeguard farmers and ranchers against receiving less than the true market value of their livestock." *Bruhn's Freezer Meats v. United States Department of Agriculture*, 438 F.2d 1332, 1337 (8th Cir. 1971). Timely payment in a livestock purchase prevents the seller from being forced, in effect, to finance the transaction. By insuring that the seller will receive the fair market value of his livestock, undiminished by the cost of financing the sale, the requirement that a purchaser make timely payment fulfills the purpose of the Act. Mid-States contravened that requirement, and thus became subject to the sanctions which the Act provides. *See Mahon v. Stowers*, 416 U.S. 100, 111, 94 S.Ct. 1626, 40 L.Ed.2d 79 (1973) (dictum); *Bowman v. United States Department of Agriculture*, 363 F.2d 81, 85 (5th Cir. 1966). That Mid-States' inability to meet its obligations may be characterized as a debtor/creditor problem is irrelevant to our disposition of the case.

## II

■ Petitioners next argue that the failure of Mid-States to pay for livestock when due involved a series of isolated acts and was therefore not an "unfair . . . or

---

**2.** Section 312(a) of the Packers and Stockyards Act provides:

It shall be unlawful for any stockyard owner, market agency, or dealer to engage in or use any unfair, unjustly discriminatory, or deceptive practice or device in connection with determining whether persons should be authorized to operate at the stockyards, or with receiving, marketing, buying, or selling on a commission basis or otherwise, feeding, watering, holding, delivery, shipment, weighing, or handling, in commerce, of livestock.

**3.** Section 201.43(b) of the regulations provides in pertinent part:

Each packer, market agency, or dealer purchasing livestock shall before the close of the next business day following the purchase of livestock and the determination of the amount of the purchase price, transmit or deliver to the seller or his duly authorized agent the full amount of the purchase price, unless otherwise expressly agreed between the parties before the purchase of the livestock. Any such agreement shall be disclosed in the records of any market agency or dealer selling the livestock, and in the purchaser's records and on the accounts or other documents issued by the purchaser relating to the transaction.

deceptive practice or device" within the meaning of § 312(a) of the Act. They rely primarily on *Guenther v. Morehead*, 272 F.Supp. 721 (S.D. Iowa 1967), which held that § 312(a) did not apply to the wrongful negotiation of a check.

We find *Guenther* inapposite. The present case embraces thirty-one cattle purchases resulting in losses of over $500,000 to livestock owners. Mid-States' failure to pay for the cattle it had purchased involved a deliberate course of conduct, not an isolated event. That conduct was proscribed by § 312(a). *See Bowman v. United States Department of Agriculture, supra* at 85; *Swift & Co. v. United States*, 317 F.2d 53 (7th Cir. 1963) ("unfair . . . or deceptive practice or device" under § 202(a) of the Act).

■ Mid-States' failure to pay was also clearly proscribed by § 201.43(b) of the regulations of the Secretary of Agriculture. 9 C.F.R. § 201.43(b). That section represents the Secretary's construction of the Act. And, of course, great deference is accorded the construction of a statute by the agency charged with its enforcement. *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

In sum, we conclude that the Secretary had jurisdiction to adjudicate petitioners' case.

### III

■ Finally, petitioner Van's Livestock, Inc. complains that it was never formally notified of the charges against it. Van's Livestock, Inc. contends that its suspension is therefore invalid.

The ALJ found that Van's Livestock, Inc. is the corporate successor to Mid-States. Substantial evidence supports that finding. As we stated in *Bruhn's Freezer Meats v. United States Department of Agriculture, supra* at 1343:

[T]he corporate entity may be disregarded when the failure to do so would enable the corporate device to be used to circumvent a statute.

The record convincingly demonstrates that the Secretary's case and respondents' defense treated the proceedings as encompassing Van's Livestock, Inc. Thus, failure to name Van's Livestock, Inc. as a respondent in the original complaint was not prejudicial to either of the petitioners. To permit Van's Livestock, Inc. to escape suspension would obviate the sanctions imposed on Van Wyk and Mid-States. Moreover, formal notice would have been superfluous because Van's Livestock, Inc. is Mid-States' corporate successor and Van Wyk's alter ego. *See Sebastopol Meat Co. v. Secretary of Agriculture*, 440 F.2d 983, 984–86 (9th Cir. 1971); *Bruhn's Freezer Meats v. United States Department of Agriculture, supra* at 1342–43.

■ We conclude that the facts reflected by this record reveal a flagrant and aggravated violation of the pertinent provisions of the Act, and the sanction imposed was fully justified. The order of the Secretary is affirmed and the petition for review is denied.