John MILES, Jr., Appellant,

v.

Robert K. STARKS d/b/a Western Cattle Company and d/b/a Saginaw Cattle Company and Hartford Accident & Indemnity Company, Appellee.

No. 18145.

Court of Civil Appeals of Texas, Fort Worth.

Nov. 8, 1979.

Rehearing Denied Dec. 6, 1979.

Hooper & Chappell and Douglas R. Hudman, Fort Worth, for appellant.

McMahon, Smart, Wilson, Surovik & Suttle and Michael S. Baskerville, Abilene, for appellee Robert K. Starks.

Garrett, Settle & Callaway and Rufus S. Garrett, Jr., Fort Worth, for appellee Hartford Acc. & Indem. Co.

## OPINION

SPURLOCK, Justice.

This is an appeal from a portion of a judgment that the seller of cattle take nothing against the surety of the buyer on a livestock dealer's bond. The primary question on appeal is whether the transaction in question constituted a purchase within the terms of the bond and federal law authorizing and requiring the bond.

We reverse and render.

John Miles, Jr., raises cattle on a ranch near Cresson, Texas. Robert Starks is a bonded livestock dealer who is an Illinois domiciliary. Hartford Accident & Indemnity Company is the surety on his livestock dealer bond issued pursuant to the Packers & Stockyards Act, 7 U.S.C.A. § 204 (Supp. 1979). On April 20, 1976 Starks visited Miles at his ranch and entered into a written contract on a form supplied by Starks. The contract provided in pertinent part as follows:

> "THIS CONTRACT of agreement made and entered into this the 20th day of April, 1976, by and between Miles Cattle Co. of Cresson, Texas, hereinafter called Seller, and Western Cattle Co. of Mendota, Ill., hereinafter called Buyer.
>
> "The Seller hereby sells and agrees to deliver to Buyer, or his order, the following described livestock: . . . (cattle described).
>
> ". . .
>
> "Seller acknowledges receipt of $14,300.00 at (sic) part payment by the Buyer—balance to be paid at time of delivery in current funds.
>
> ". . .
>
> "Seller agrees to furnish State and Federal inspection that will pass all regulations, and delivery is to be made F.O.B. cars or trucks in good condition at Ranch."

The agreement provided for delivery of the cattle in three lots during three designated delivery periods. The price agreed upon was $45.00 per hundred weight with cattle to be driven dry and weighed upon shipment. After the date of the contract but before the first delivery period the market price of cattle dropped below the contract price. By agreement of the parties the first delivery of cattle was postponed. The market, however, did not improve and before any shipment was made Starks informed Miles that he could not pay for the cattle and would not accept delivery.

Miles and Starks worked together to sell the cattle to other buyers. Each party approved the sales, which were all for a price lower than the contract price. Miles credited Starks with the proceeds from the sales and the $14,300.00 Starks had already paid leaving a deficiency of $25,580.23. On September 21, 1976 Miles made a claim on Starks's livestock dealer's bond which was denied. Miles then filed suit against Starks and Hartford for the deficiency.

After a trial to the court, judgment was rendered against Starks for the deficiency. The court also rendered judgment that Miles take nothing against Hartford. The portion of the judgment against Starks has not been appealed.

Miles prosecutes this appeal on the take nothing portion of the judgment by five points of error. Miles's basic contention in all points is that the trial court erred in concluding that the transaction in question did not constitute a purchase within the terms of the bond. The bond provides in pertinent part as follows:

"(2) If the said Principal (Starks) shall pay when due to the person or persons entitled thereto the purchase price of all livestock *purchased* by said Principal for his own account or for the accounts of others, . . .

" . . .

"[T]hen this bond shall be null and void, otherwise to remain in full force and virtue, subject to the following terms, conditions, and limitations:

" . . .

"(c) Any person damaged by failure of the Principal to comply with any condition clause of this bond, may maintain suit in his own name to recover on this bond . . . ." (Emphasis ours.)

The form and language of the bond are as prescribed by the federal regulations under the Packers and Stockyards Act found at 9 C.F.R. § 201.27 (1978).

In its findings of fact and conclusions of law the trial court found that the contract in this case was one for a future purchase, rather than of a contract of purchase. Thus, the court found that there was no purchase as the term is used in the bond and applicable federal and Texas law. The court also found that Miles retained title to the cattle at all material times and that Hartford is not liable on the bond. Further, Hartford is not liable because the bond only applies where one has parted with his cattle and the purchaser fails to pay the price agreed upon for them. Miles's points of error and arguments dispute each of the pertinent findings and conclusions.

Neither the act nor the regulations thereunder define "purchase". However, we decide that if the contract and transaction in question resulted in a sale it follows a *fortiori* that there was a purchase within the ambit of the bond and controlling law. After a thorough examination of the contract and record in this case, we conclude there was a sale of the cattle and a corresponding purchase.

Note that the contract states that the seller *hereby sells* and agrees to deliver. This manifests the present intent to sell. In the context here, sell is the transfer of title to and property rights in the cattle for a price. Hartford correctly states that Tex. Bus. & Comm.Code Ann. § 2.401(b) (1968) dealing with the sale of goods provides title passes to goods at the time and place at which the seller completes his performance with reference to physical delivery of the goods. Where, as here, the delivery agreement did not require the seller to deliver the goods at destination, title passes to the buyer at the time and place of shipment. We note the contract provided for shipment F.O.B. seller's ranch.

Hartford would have us apply this section of the U.C.C. and hold that there was no purchase or sale of the cattle because they weren't shipped. However, § 2.401(b), which requires physical delivery, applies only where the parties have not otherwise explicitly agreed when title to goods shall pass. While it is true that the term title was not mentioned in the contract, we conclude that the provision that the "seller hereby sells" is sufficient to evidence a present sale and passage of title. Only the transfer of physical possession and payment of the balance of the purchase price were executory.

Hartford contends that the fact that the contract allowed Starks to reject crippled, lump-jawed, bad-eyed, or otherwise unmerchantable cattle and to cull 10 head or less for quality resulted in the goods being unidentified. Hartford correctly states that under the U.C.C., unidentified

goods are future goods which cannot be the subject of a present sale until identification pursuant to Tex.Bus. & Comm.Code Ann. § 2.501 (1968) takes place. Hartford further notes that such identification would have taken place at shipment. The cattle would have been weighed then, thus determining the exact purchase price for the first time.

We conclude that the cattle in question were sufficiently identified at the time the contract was signed. The evidence established that the cattle described in the contract constituted Miles's whole herd. Tex. Bus. & Comm.Code Ann. § 2.501(a) (1968) provides that identification can be made even though the goods so identified are non-conforming and the buyer has an option to return or reject the non-conforming goods. If this were not the law it might be impossible for a sale to take place until the goods were inspected and all rejections and returns were made. We cannot accept this as the intent of this section of the U.C.C. Thus we conclude that under the facts of this case and the provisions of the contract with which we are involved, the determination of exactly which head of cattle, exactly what weight, and shipment thereof F.O.B. seller's ranch are immaterial to whether there was a sale.

Because we have held that there was a sale of the cattle at the time of the contract, we conclude that there was a purchase under the terms of the bond. We note, however, the possibility that the contract and transaction could also constitute a purchase as defined by Tex.Bus. & Comm. Code Ann. § 1.201(32) (1968). That section defines purchase as follows:

"(32) 'Purchase' includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift or any other voluntary transaction creating an interest in property."

Tex.Bus. & Comm.Code Ann. § 2.106 (1968) defines sale as the passing of title from the seller to the buyer for a price. We note that purchase as defined by Tex. Bus. & Comm.Code Ann. § 1.201(32) (1968) speaks of a voluntary transaction creating an interest in property without any reference to title.

■ As discussed above, Tex.Bus. & Comm.Code Ann. § 2.501(a) (1968) provides that the buyer obtains a special property interest and an insurable interest in goods by identification of existing goods to which the contract refers even though the goods so identified are non-conforming and the buyer has an option to return or reject them. Since the cattle described in the contract consisted of Miles' entire herd, identification took place at the time the contract was signed. Thus Starks acquired a special property interest and an insurable interest in the cattle even if we should hold that title had not also passed. We assume without deciding that this interest would be within the definition of "purchase".

■ Our decision that there has been a purchase within the terms of the bond and applicable law is guided by the rule that a liberal construction of the bond and controlling law is to be given to effect the purposes for both the bond and the Packers and Stockyards Act. The Act is remedial legislation and states that it is to be liberally construed in accord with its purpose to prevent economic harm to the producers and consumers of livestock. The purpose of the bond requirement is to safeguard the producers of livestock against losses suffered if they sell their livestock to insolvent or defaulting purchasers. The Act intended to stabilize and encourage the production of beef and other livestock by building confidence in the financial stability of the dealers. *Travelers Indem. Co. v. Manley Cattle Co.*, 553 F.2d 943 (5th Cir. 1977).

By a counterpoint of error Hartford contends that the trial court was correct in rendering its take nothing judgment because Miles' claim on the bond was not timely filed. The bond provided that all claims must be filed within 120 days of the date of the transaction upon which the claim is made. Hartford would have us construe transaction as used in the condition of limitation in the bond to mean the date of the contract. It notes that through-

out this litigation Miles has contended that there was a purchase as of the date of the contract, April 20, 1976. Hartford states in its brief that Miles filed his claim on September 21, 1976.

 We decline to construe the date of the transaction in this case as the date of the contract. Neither the Packers and Stockyards Act nor the regulations thereunder define the term. However, we are convinced that the use of transaction is broader in scope than merely the date of the contract. Generally a transaction consists of an act, agreement, or several acts or agreements between or among parties whereby a cause of action or alteration of legal rights occur. Here we hold that the transaction includes the dates within which delivery and payment were supposed to have occurred but for Stark's breach of the contract of sale.

Under the circumstances presented it is readily foreseeable that if the date of the transaction was held to be the date of the contract it is possible that no actionable breach could occur within 120 days and thus the time for filing a claim on the bond would expire before any claim arose. A construction making possible such a result does not conform with the purpose of the bond. We hold that the date of the transaction under the bond in this case includes the delivery periods within which the breach occurred and that the claim was timely filed. We overrule Hartford's counterpoint.

We reverse the portion of the judgment providing that Miles take nothing against Hartford. We render judgment that Miles recover against Hartford on the bond the amount of the deficiency, $25,580.23, plus interest at 6% per annum from November 30, 1976, the date Hartford denied the claim, to October 3, 1978, the date of the trial court's judgment. Judgment is also rendered that Miles recover interest on $25,580.23 at 9% per annum from October 3, 1978, until the judgment is paid.