Jerry SUTTON and Susan Sutton,
husband and wife, et al.,
Respondents,

v.

Marlyn HANSEN and Rhonda Hansen,
husband and wife, Appellants,

United Prairie Bank, Trustee,
Respondent.

No. C0–96–1373.

Court of Appeals of Minnesota.

April 15, 1997.

Review Denied June 26, 1997.

Thomas E. Towe, Towe, Ball, Enright, Mackey & Sommerfeld, P.L.L.P., Billings, MT, and Dana Brandt Rebelein, New Brighton, for Respondents Jerry and Susan Sutton, et al.

Hans K. Carlson, Muir, Costello & Carlson, Jackson, for Respondent United Prairie Bank.

James A. Wilson, Johnson, Berens & Wilson, Fairmont, for Appellants.

Considered and decided by KLAPHAKE, P.J., and WILLIS, and MULALLY,* JJ.

## OPINION

WILLIS, Judge.

Appellants Marlyn and Rhonda Hansen challenge summary judgment in favor of respondents Jerry and Susan Sutton and Tom Krantz whereby the district court deter-

mined that respondents' claim was timely filed with the Packers and Stockyards Administration. The Hansens were guarantors of the letter of credit that provided funds for the trust agreement against which respondents made a claim. The Hansens contend respondents' claim was untimely because it was filed more than 60 days after the date of the transaction on which the claim was based. Respondents argue that the issue of the timeliness of the claim is moot. We reverse.

## FACTS

In 1991, Robert Dekker went into the business of buying and selling cattle. Marlyn Hansen provided financing to Dekker and received a percentage of his business profits. Federal law requires cattle dealers, such as Dekker, to obtain a bond or bond equivalent to assure cattle producers that they will be paid. 7 U.S.C. § 204 (1994); 9 C.F.R. § 201.10 (1996). Dekker entered into a trust agreement, a bond equivalent, with United Prairie Bank (the bank). The bank issued a letter of credit in the amount of $40,000, which could be drawn against to fund the trust agreement. Hansen and his wife secured a line of credit from the bank to fund cattle purchases. The agreement between Hansens and the bank provided that $40,000 of the credit line would be set aside for use if the bank's letter of credit were drawn on.

In August 1993, in separate contracts, Susan and Jerry Sutton and Richard Krantz agreed to sell cattle to Dekker, and he made down payments. Both contracts provide that the sellers were to deliver the cattle by October 25, 1993, and that Dekker would pay the balance of the purchase price upon delivery. The parties to both transactions allege, however, that the sellers agreed with Dekker that payment in full would be deferred until after the end of calendar year 1993. The Suttons claim that in the course of their August 1993 negotiations with Dekker they agreed to defer payment in full. Richard Krantz claims that on the two dates that he delivered his cattle, he and Dekker agreed to

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

defer payment in full. The Suttons delivered their cattle to Dekker on October 19, 1993. Richard Krantz delivered his cattle to Dekker on October 20, 1993, and October 27, 1993. Upon those deliveries, Dekker gave the Suttons and Richard Krantz withdrawal slips dated January 3, 1994, against his bank account for the balances of their purchase prices.

On December 28, 1993, Dekker told Tom Krantz—Richard Krantz's brother and Dekker's contact for the purchase from Richard—that he did not have adequate funds to cover the outstanding withdrawal slips. Tom Krantz deposited into Dekker's account the amount needed to cover Dekker's obligation to Richard Krantz. In return for covering the shortage, Tom Krantz assumed Richard Krantz's claim against Dekker. Dekker also told Tom Krantz about his unsatisfied obligation to the Suttons and said that he would send Tom Krantz a check for the amount he owed on his purchases from Richard Krantz and the Suttons. Dekker instructed Tom Krantz to deposit the check and file a claim with the Packers and Stockyards Administration against Dekker's trust agreement when the check was returned for insufficient funds.

On January 12, 1994, Tom Krantz submitted the Suttons' claim with his own to the Packers and Stockyards Administration. A month later, Dekker filed for bankruptcy. Because of Dekker's bankruptcy filing, the Packers and Stockyards Administration took no action to collect the balance of his obligations to Tom Krantz and the Suttons. In response to the Packers and Stockyards Act claim, and the Hansens' opposition to that claim, the bank terminated Dekker's trust agreement, drew on its letter of credit, and deposited the disputed funds with the court administrator.

In October 1994, Tom Krantz and the Suttons filed a complaint alleging, in part, that they are the intended beneficiaries of the funds the bank deposited with the court administrator. In their answer, the Hansens alleged that respondents' claim against the trust agreement was not timely filed. The parties filed cross-motions for summary judgment. The district court denied the Hansens' motion and granted respondents'

motion, determining that plaintiffs' claims were timely filed with the Packers and Stockyards Administration, and, therefore, respondents are entitled to their respective shares of the trust funds. This appeal follows.

## ISSUE

Did the district court err in determining that respondents filed timely claims with the Packers and Stockyards Administration?

## ANALYSIS

Summary judgment is proper when no genuine issue of material fact exists and either party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. On appeal from summary judgment, this court reviews the record to determine "(1) whether there are any genuine issues of material fact to be determined, and (2) whether the district court erred in its application of the law." *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996). In doing so, this court views the facts in the light most favorable to the party against whom summary judgment was granted. *Id.*

The Packers and Stockyards Act (the Act) requires livestock dealers to secure the performance of their obligations by executing and maintaining a bond or a bond equivalent. 7 U.S.C. § 204 (1994); 9 C.F.R. § 201.10 (1996); *see also* 9 C.F.R. §§ 201.27–201.34 (1996) (regulating bonding procedures applicable to livestock dealers). Federal regulations provide:

> The surety on the bond, or the trustee on the bond equivalent, as the case may be, shall not be liable to pay any claim if it is not filed in writing within 60 days from the date of the transaction on which the claim is based.

9 C.F.R. § 201.33(d) (1996). Similarly, the trust agreement signed by the bank and Dekker provides:

> The trustee shall not be liable to pay any claim for recovery under this agreement if it is not in writing and received by either the trustee or the Administrator within 60 days from the date of the transaction on which the claim is based.

■ Neither the Act nor the regulations promulgated thereunder define "the date of the transaction." In *Miles v. Starks*, 590 S.W.2d 223 (Tex.Civ.App.1979), *cert. denied*, 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980), the court stated:

> [W]e are convinced that the use of transaction is broader in scope than merely the date of the contract. Generally a transaction consists of an act, an agreement, or several acts or agreements between or among parties whereby a cause of action or alteration of legal rights occur. Here, we hold that the transaction includes the dates within which delivery and payment were supposed to have occurred but for [the buyer's] breach of the contract of sale.

*Id.* at 227. We agree with the *Miles* court that the transaction date extends beyond the date of the contract to the dates of delivery and payment provided by the contract. The parties here, however, dispute the date payment was due and thus dispute "the date of the transaction on which the claim is based."

■ Respondents contend payment was due on January 3, 1994, and, therefore, that is the date of the transaction on which the claim was based. Respondents, however, ignore the provisions of 7 U.S.C. § 228b (1994), which govern when payment is due for the purchase of livestock:

> (a) Each * * * dealer purchasing livestock shall, before the close of the next business day following the purchase of livestock and transfer of possession thereof, deliver to the seller or his duly authorized representative the full amount of the purchase price. * * *
>
> (b) * * * [T]he parties to the purchase and sale of livestock may expressly agree in writing, before such purchase or sale, to effect payment in a manner other than

that required in subsection (a) of this section. Any such agreement shall be disclosed in the records of any market agency or dealer selling the livestock, and in the purchaser's records and on the accounts or other documents issued by the purchaser relating to the transaction.

*Id.*

The purchase agreements here provide that the balances of the purchase prices were "to be paid on delivery." The only writings respondents point to as evidencing the alleged agreements to defer payment are the postdated withdrawal slips signed by Decker and the writing on the receipt for Richard Krantz's October 20, 1993 delivery, which says "deferred" next to the amount of the balance due. The district court concluded that the Suttons' and Krantz's "acceptance of the withdrawal slips [on the dates the cattle were delivered] constituted a valid extension of the time of payment" until December 28, 1993, the date the sellers received notice of Dekker's inability to make payment in full. We disagree. The payment was due here on the delivery date, as provided for in the purchase agreements, because there is no evidence that Dekker and the sellers agreed to waive the prompt payment requirement "in writing, *before* such purchase or sale." *See* 7 U.S.C. § 228b(b) (emphasis added).

■ All sellers here delivered their cattle to Dekker by October 27, 1993. Thus, the latest of the 60–day time periods for filing a claim under the Act began October 28, the next business day after Richard Krantz made his second delivery of cattle to Dekker, and expired December 27, 1993. Respondents' claim was, therefore, untimely because it was filed more than 60 days after the date of the transaction on which the claim was based.[1]

---

1. We note that the withdrawal slips the sellers received upon delivering their cattle to Dekker, and the check mailed in December 1993 for the balances due on the cattle purchases, were in noncompliance with regulatory requirements governing the form of payment for livestock. A dealer purchasing livestock cannot make payment "by a draft which is not a check, unless the seller expressly agrees in writing before the transaction that payment may be made by such a draft." 9 C.F.R. § 201.43(b)(1) (1996). There is no evidence that the sellers agreed in writing

before the transaction that Dekker could pay for their cattle by giving them withdrawal slips against his bank account, rather than by delivering checks. Moreover, a dealer cannot mail a check in payment for livestock unless the seller or his authorized representative is not present to receive payment within one business day after delivery or "the seller expressly agrees in writing before the transaction that payment may be made by such mailing of a check." 9 C.F.R. § 201.43(b)(2)(ii) (1996). The record shows that the sellers were present to receive payment upon

While the Act is designed to protect sellers of livestock by securing the performance of dealers' obligations, it also provides limitations on the obligations of sureties. By not complying with regulations issued pursuant to the Act for the benefit of sellers, respondents and Dekker made these sales credit transactions, and respondents assumed the risks attendant to such transactions.

■ Respondents claim that the Hansens waived their right to challenge the absence of a written agreement to defer payment by not pleading the writing requirement as an affirmative defense. Respondents contend the section 228b(b) writing requirement is comparable to the statute of frauds, which is a defense that a party must plead affirmatively. *See* Minn.R.Civ.P. 8.03 (listing defenses, including statute of frauds, that a party must set forth affirmatively in pleading to a preceding pleading). Rule 8.03 does not apply to this transaction because the writing requirement at issue here is not within the ambit of the statute of frauds. *See* Minn. Stat. §§ 513.01–.07 (1996) (listing agreements that must be in writing to be valid under statute of frauds).

■ Respondents also contend this appeal is moot because the court administrator disbursed the trust funds. We disagree. Respondents' reliance on *Schumacher v. Tidswell*, 138 Mich.App. 708, 360 N.W.2d 915 (1984), is misplaced. The court in that case noted that the controversy was technically moot because the underlying judgment had been "satisfied." *Id.* 360 N.W.2d at 918; *see Boulevard Del, Inc. v. Stillman*, 343 N.W.2d 50, 52 (Minn.App.1984) ("[A] judgment which is paid and satisfied of record ceases to have any existence."). The Hansens made no payment to respondents to satisfy the judgment here.

The Hansens are entitled to appellate review despite their failure to obtain a stay of the district court's decision pending appeal.

[A] review on the merits is not precluded by appellant's decision not to seek a stay of

delivery, and there is no evidence that the sellers agreed in writing before the transaction that

proceedings pending appeal by exercising his right not to file a supersedeas bond. *Tourville v. Tourville*, 289 Minn. 544, 545, 185 N.W.2d 281, 282 (1971). Although the Hansens cannot simply look to the court administrator for funds to pay a judgment, an award of effective relief is not impossible. *Cf. Nelson v. Production Credit Ass'n*, 382 N.W.2d 565, 566 (Minn.App.1986) (stating that appeal should be dismissed if decision on the merits is unnecessary or award of effective relief is impossible).

### DECISION

Respondents did not file a timely claim under the Packers and Stockyard Act because they filed their claim more than 60 days after the date of the transaction on which the claim is based.

**Reversed.**

Dekker could make payment by mailing a check.