622 F.2d 972
 BLUE CROSS ASSOCIATION, Appellee,
and
American Hospital Association, Intervenor-Appellee,
v.
Patricia R. HARRIS, Secretary of Health, Education &
Welfare, Leonard Schaeffer, Administrator, Health
Care Financing Administration, Appellants.
MISSOURI HOSPITAL ASSOCIATION, a pro forma decree
corporation, Kansas City Area Hospital Association, a
corporation, Hospital Association of Metropolitan St. Louis,
a corporation, Kansas Hospital Association, a corporation, Appellees,
and
American Hospital Association, Intervenor-Appellee,
v.
Patricia R. HARRIS, Secretary of the United States
Department of Health, Education & Welfare, Leonard
D. Schaeffer, Administrator of the
Health Care Financing
Administration, Appellants.
 Nos. 79-1732, 79-1733.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1980.
Decided June 6, 1980.
Rehearing and Rehearing En Banc Denied June 30, 1980.
 
 Barbara L. Gordon, Atty., Civ. Div., Dept. of Justice, Washington, D. C. (argued), Alice Daniel, Acting Asst. Atty. Gen., Civ. Div., William G. Kanter, Atty., Civ. Div., Dept. of Justice, Washington, D. C., Ronald S. Reed, former U. S. Atty., St. Louis, Mo., and Lloyd M. Weinerman, Office of the General Counsel, Dept. of HEW, Baltimore, Md., on brief, for appellants.
 James C. Munson, Kirkland & Ellis, Chicago, Ill. (argued), James D. Adducci and Kathleen Kelly Spear, Chicago, Ill., Thomas E. Deacy, Jr. and Philip B. Grubaugh, Deacy & Deacy, Kansas City, Mo., Cullen Coil, Carson, Monaco, Coil, Riley & McMillin, Jefferson City, Mo., Richard L. Epstein and Jay H. Hedgepeth, American Hospital Assn., Chicago, Ill., John C. Shepherd, Coburn, Croft, Shepherd & Herzog, St. Louis, Mo., Wayne T. Stratton, Goodell, Stratton, Edmonds, Palmer & Wright, Topeka, Kan., and Carl H. Helmstetter, Spencer, Fane, Britt & Browne, Kansas City, Mo., on brief, for appellees.
 Before LAY, Chief Judge and BRIGHT and HENLEY, Circuit Judges.
 BRIGHT, Circuit Judge.
 
 
 1
 Patricia Harris, Secretary of Health, Education and Welfare, and Leonard Schaeffer, Administrator of the Health Care Financing Administration (collectively, the Secretary or HEW), bring these consolidated appeals from a judgment of the district court in favor of Blue Cross Association, et al. (Blue Cross). Blue Cross currently serves as a fiscal intermediary, an agency which deals with HEW on behalf of hospitals and other providers of Medicare services. See text at notes 1-5 infra. The issue before us on appeal is whether the Secretary, in soliciting offers for an experimental contract to administer Medicare Part A funds, must comply with the statutory provisions that normally govern the nomination and assignment of intermediaries such as Blue Cross.
 
 
 2
 Pursuant to a statutory provision authorizing HEW to enter into experimental contracts for the administration of Medicare funds, the Secretary solicited offers for a fixed price contract to administer Medicare Part A funds in Missouri and metropolitan Kansas City. The organizations and agencies solicited included, but were not limited to, fiscal intermediaries nominated by Missouri and metropolitan Kansas City health care providers. Blue Cross, a nominated intermediary, thereafter brought this suit, claiming that the Secretary's action in seeking offers from entities not nominated by health care providers exceeded her authority under the Medicare Act. The district court agreed and accordingly enjoined the Secretary from entering into any experimental contract until she had attempted in good faith to negotiate the contract with intermediaries nominated by the affected providers. Blue Cross Association v. Califano, 473 F.Supp. 1047, 1076-77 (W.D.Mo.1979). For reasons set forth below, we reverse the district court's judgment, vacate its injunction, and remand the case for entry of a judgment of dismissal.
 
 
 3
 I. Background.
 
 
 4
 In 1965 Congress enacted the Medicare Act (Medicare or the Act),[1] offering medical benefits to the elderly and disabled. Medicare Part A[2] primarily provides hospital insurance benefits for eligible Medicare recipients. As set forth in the Act, "any group or association of providers of (Medicare Part A) services"[3] may nominate a fiscal intermediary[4] to reimburse its members for costs incurred in treating Medicare recipients.[5] 42 U.S.C. § 1395h(a) (Supp. II 1978). The Secretary contracts with these nominated intermediaries to administer Medicare Part A funds and compensates them on a cost basis. This means that HEW reimburses the intermediaries for administrative expenses as well as for funds advanced to providers. See 42 U.S.C. § 1395h(c), (a) (1976 & Supp. II 1978).
 
 
 5
 In 1972 Congress amended the Act. One section of the 1972 amendments, now codified at 42 U.S.C. § 1395b-1 (1976 & Supp. II 1978) (the experimental statute), authorized the Secretary "to develop and engage in experiments and demonstration projects" for a number of specified purposes. 42 U.S.C. § 1395b-1(a)(1) (1976 & Supp. II 1978). In pertinent part, the experimental statute authorizes the Secretary to determine by means of an experiment
 
 
 6
 whether, and if so which type of, fixed price or performance incentive contract would have the effect of inducing to the greatest degree effective, efficient, and economical performance of agencies and organizations making payment under agreements or contracts with the Secretary for health care and services under health programs established by this chapter (7 of Title 42, 42 U.S.C. § 301 et seq. (1976 & Supp. II 1978)) * * *. (42 U.S.C. § 1395b-1(a)(1) (F) (1976).)
 
 
 7
 The Secretary chose Missouri and metropolitan Kansas City as the laboratory for such an experiment. On January 31, 1979, HEW solicited proposals for a fixed price Medicare Part A intermediary contract covering these areas. The Secretary solicited proposals by issuing a Request for Proposal (RFP)[6] to organizations including but not limited to intermediaries nominated by Missouri and metropolitan Kansas City health care providers.[7]
 
 
 8
 Having received the Secretary's RFP, Blue Cross instituted this action in district court for declaratory and injunctive relief.[8] After the parties filed cross motions for summary judgment, the district court held that, "insofar as the Request for Proposal * * * fail(ed) to recognize the applicability of 42 U.S.C. § 1395h," it exceeded the Secretary's authority under the experimental statute.[9] Blue Cross Association v. Califano, supra, 473 F.Supp. at 1076. The district court therefore enjoined the Secretary from soliciting offers from organizations not nominated by providers and from entering into an experimental fixed price contract, until she attempted in good faith to negotiate such a contract with the intermediaries nominated by health care providers in the affected areas. See note 7 supra. Blue Cross Association v. Califano, supra, 473 F.Supp. at 1076-77. If the contract was ultimately awarded to an entity not nominated by the providers, the district court also required the Secretary to give a full explanation to the affected providers and nominated intermediaries, and to afford the latter opportunity for a hearing subject to judicial review. See 42 U.S.C. § 1395h(e) (Supp. II 1978) and note 9 supra. Blue Cross Association v. Califano, supra, 473 F.Supp. at 1077.
 
 
 9
 The district court reasoned that because the experimental statute did not plainly authorize the Secretary to suspend the operation of the Act's provider nomination and intermediary due process provisions,[10] the Secretary must comply with those provisions. Id. at 1066-67, 1069. In other words, the district court construed the language of the experimental statute as giving the Secretary only narrow authority to waive compliance with other provisions of the Act.[11] Id. at 1067-68.
 
 
 10
 II. Analysis.
 
 
 11
 A. The Experimental Statute and the Provider Nomination Provisions.
 
 
 12
 Because this case presents a question of statutory interpretation, we begin our analysis with the language of the statute itself. E. g., Touche Ross & Co. v. Redington, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); Southeastern Community College v. Davis, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979); Reiter v. Sonotone Corp., 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979). The applicable language of the experimental statute provides:
 
 
 13
 (a)(1) The Secretary of Health, Education, and Welfare is authorized, either directly or through grants to public or nonprofit private agencies, institutions, and organizations or contracts with public or private agencies, institutions, and organizations, to develop and engage in experiments and demonstration projects for the following purposes:
 
 
 14
 (F) to determine whether, and if so which type of, fixed price or performance incentive contract would have the effect of inducing to the greatest degree effective, efficient, and economical performance of agencies and organizations making payment under agreements or contracts with the Secretary for health care and services under health programs established by this chapter(.) (42 U.S.C. § 1395b-1(a)(1)(F) (1976) (emphasis added).)
 
 
 15
 This language clearly does not require the Secretary to contract only with nominated intermediaries. On the contrary, the statute unambiguously vests the Secretary with authority to contract "with public or private agencies, institutions, and organizations," for the purpose of conducting the enumerated experiments. Id.
 
 
 16
 In a recent case presenting a question of statutory construction similar to that before us, the Seventh Circuit gave full effect to this sweeping language. Health Care Service Corp. v. Califano, 601 F.2d 934, 935 (7th Cir. 1979) (per curiam ), aff'g 466 F.Supp. 1190 (N.D.Ill.1979). The issue there was whether the Secretary could award an experimental fixed price contract for administration of the Medicare Part B program in Illinois without complying with the statutory requirement that HEW contract with a "carrier." See 42 U.S.C. § 1395u(a) (1976).[12] The court held that the Secretary could do so in light of the provision of the experimental statute in issue here.[13] We agree with the Seventh Circuit that the experimental statute authorizes the Secretary to enter into fixed price contracts with any agency, institution or organization, not limited to those organizations which are specifically mentioned elsewhere in the Social Security Act.[14]
 
 
 17
 The experimental statute's only express limitation upon the Secretary's authority to conduct experiments or demonstration projects reads as follows:
 
 
 18
 (b) * * *
 
 
 19
 No experiment or demonstration project shall be engaged in or developed under subsection (a) of this section until the Secretary obtains the advice and recommendations of specialists who are competent to evaluate the proposed experiment or demonstration project as to the soundness of its objectives, the possibilities of securing productive results, the adequacy of resources to conduct the proposed experiment or demonstration project, and its relationship to other similar experiments and projects already completed or in process. (42 U.S.C. § 1395b-1(b) (1976).)
 
 
 20
 This limitation, specifying only the conditions which the Secretary must meet before entering into any contract authorized by the experimental statute, obviously does not forbid the Secretary to contract with entities not nominated by health care providers.[15]
 
 
 21
 If the plain language of a statute is clear in its context, it is controlling. E. g., Ernst & Ernst v. Hochfelder, 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976). In this case, the plain language of the experimental statute clearly authorizes the Secretary to contract with entities other than intermediaries nominated by health care providers under 42 U.S.C. § 1395h(a), (d) (1976 & Supp. II 1978). It follows that she may freely negotiate with these agencies, institutions, and organizations. Finding no relevant limitation on her authority in the experimental statute, we hold that the Secretary may negotiate and contract with any entity covered by the statute's terms in accordance with her RFP.
 
 
 22
 B. The Experimental Statute and the Intermediary Due Process Provision.
 
 
 23
 The Act provides that, notwithstanding Medicare Part A's provider nomination provisions,
 
 
 24
 the Secretary, after taking into consideration any preferences of providers of services, may assign or reassign any provider of services to any agency or organization which has entered into an agreement with h(er) under this section, if (s)he determines, after applying the standards, criteria, and procedures developed under (42 U.S.C. § 1395h(f) (Supp. II 1978)), that such assignment or reassignment would result in the more effective and efficient administration of (Medicare Part A). (42 U.S.C. § 1395h(e)(1) (Supp. II 1978).)
 
 
 25
 Before the Secretary may make such assignment of health care providers to an intermediary not nominated by them, she must provide the intermediary nominated by the providers with an explanation and an opportunity for a hearing, subject to judicial review. 42 U.S.C. § 1395h(e)(3)(A) (Supp. II 1978). See note 9 supra. The district court required the Secretary to afford the protections of this intermediary due process provision to those nominated intermediaries which are not awarded the experimental fixed price contract. In so applying this provision, the district court erred in two respects.
 
 
 26
 First, the intermediary due process provision by its terms does not apply to the award of a fixed price contract under the experimental statute. The intermediary due process provision applies only when the Secretary, having applied performance standards established under 42 U.S.C. § 1395h(f) (Supp. II 1978), makes an assignment or reassignment of providers to an intermediary not nominated by them "which has entered into an agreement with (her)" under 42 U.S.C. § 1395h (1976 & Supp. II 1978). 42 U.S.C. § 1395h(e)(1) (Supp. II 1978). In this case, conventional performance standards are themselves to be tested. Moreover, the Secretary is not going to assign or reassign affected health care providers to an intermediary "which has entered into an agreement with (her)" under the provisions of 42 U.S.C. § 1395h (1976 & Supp. II 1978),[16] but rather to one which has contracted with her under the experimental statute. Thus, the intermediary due process provision is not triggered.
 
 
 27
 To be sure, the experimental statute includes no separate authorization for the Secretary to assign or reassign providers to an intermediary not nominated by them. If, however, the experimental statute authorizes the Secretary to contract with an intermediary not nominated by affected providers, as we have determined, it follows a fortiori that she has the implicit authority to assign or reassign the providers to such an intermediary. Without this authority, her power to contract with an intermediary not nominated by providers would be meaningless. It is a commonplace of statutory construction that a legislative grant of power carries with it the right to use the means and instrumentalities necessary to the beneficial exercise of that power. Daly v. Stratton, 326 F.2d 340 (7th Cir. 1964).
 
 
 28
 Second, the district court's imposition here of the Act's intermediary due process requirements places the Secretary in an untenable position. The intermediary due process provision compels the Secretary to prove that assigning or reassigning providers to an intermediary not nominated by them "would result in the more effective and efficient administration of (Medicare Part A)." 42 U.S.C. § 1395h(e)(1) (Supp. II 1978). See 42 U.S.C. § 1395h(e) (3)(A)(ii) (Supp. II 1978). Yet the purpose of the applicable provision of the experimental statute is in part to determine whether fixed price contracting would induce "effective, efficient, and economical performance" of organizations, such as intermediaries, responsible for administering health program funds. 42 U.S.C. § 1395b-1(a)(1)(F) (1976). Superimposing the intermediary due process provision on the experimental statute would therefore require the Secretary to prove the outcome of an experiment she has not yet conducted. We think that the practical result of requiring compliance with the intermediary due process provision is to subvert the Secretary's power under the experimental statute to contract with organizations other than nominated intermediaries.
 
 
 29
 C. Deference.
 
 
 30
 Even if we doubted our reading of the experimental statute, we would reject the district court's judgment here. The district court failed to apply the doctrine of construction which counsels deference to the interpretation given a statute by the agency charged with its administration. We have frequently followed this well-settled[17] doctrine. E. g., Minnehaha Creek Watershed Dist. v. Hoffman, 597 F.2d 617, 626 (8th Cir. 1979); Van Wyk v. Bergland, 570 F.2d 701, 705 (8th Cir. 1978); T. L. Hunt, Inc. v. Commissioner, 562 F.2d 532, 535-36 (8th Cir. 1977); Usery v. Godfrey Brake & Supply Service, Inc., 545 F.2d 52, 55 (8th Cir. 1976).
 
 
 31
 The Court in Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965), explained the doctrine as follows:
 
 
 32
 When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." * * * "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.' " (Id. at 16, 85 S.Ct. at 801 (citations omitted).)
 
 
 33
 In Health Care Service Corp. v. Califano, supra, 601 F.2d at 935-36, the Seventh Circuit relied in part on this doctrine in rejecting a construction of the experimental statute similar to the one urged by Blue Cross here.[18] The court noted that "the interpretation of a complex statute such as the Medicare Act by the administrative officer charged with the responsibility of administering it is entitled to considerable deference and, if reasonable, is not to be rejected by a court merely because another interpretation may also be reasonable." Id. Such deference is reinforced "where, as here, the legislative history is silent, or at best unhelpful, with respect to the point in question." Philadelphia Television Broadcasting Co. v. FCC, 359 F.2d 282, 284 (D.C. Cir. 1966).
 
 
 34
 We believe that the Secretary's interpretation of the experimental statute, as reflected in her RFP, is reasonable. Given the complexity of the Medicare Act and the silence of the experimental statute's legislative history on the point in question, the district court should have deferred to the Secretary's interpretation of that statute.
 
 
 35
 III. Conclusion.
 
 
 36
 We emphasize that our disposition of this case in no way repeals the Act's provider nomination and intermediary due process provisions. We hold only that they do not apply while the Secretary conducts an experiment pursuant to the experimental statute. These provisions will continue to govern normal Medicare Part A cost reimbursement contracts.
 
 
 37
 On one point, at least, we agree with Blue Cross: the issues in this case regarding the Secretary's experimental authority in the health care area vitally affect the public interest. Unlike Blue Cross, however, we believe that the public interest in increasing the efficiency and reducing the cost of government health care programs is best served by the Secretary's using her authority under the experimental statute to the fullest extent permitted by the language of that statute. Only then can she determine whether fixed price or performance incentive contracts really increase the efficiency and reduce the cost of these government programs, and, if so, determine which type of contract is most conducive to these ends.
 
 
 38
 Accordingly, we reverse the judgment of the district court, vacate its injunction, and remand for entry of an appropriate judgment of dismissal.
 
 
 
 [1]
 Health Insurance for the Aged (Medicare) Act, Pub.L.No.89-97, tit. I, 79 Stat. 286 (1965) (codified in scattered sections of 26, 42, 45 U.S.C.)
 
 
 [2]
 Social Security Act Subchapter XVIII, Part A, 42 U.S.C. §§ 1395c-1395i (1976 & Supp. II 1978)
 
 
 [3]
 "The term 'provider of services' means a hospital, skilled nursing facility, or home health agency, or * * * a fund." 42 U.S.C. § 1395x(u) (1976)
 
 
 [4]
 Under the Act, "a national, State, or other public or private agency or organization" may serve as a fiscal intermediary. 42 U.S.C. § 1395h(a) (Supp. II 1978)
 
 
 [5]
 A provider may nominate an intermediary different from that nominated by the group or association to which it belongs. 42 U.S.C. § 1395h(d) (1976). A provider also has the option of dealing directly with HEW. See St. Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283, 287 n. 4 (8th Cir.), cert. denied, 429 U.S. 977, 97 S.Ct. 484, 50 L.Ed.2d 584 (1976). Under any of these circumstances providers are reimbursed for costs of their services. See 42 U.S.C. §§ 1395f(b)(1), 1395x(v) (1976 & Supp. II 1978)
 
 
 [6]
 As provided in the applicable regulations, the solicitation of proposals is a prerequisite to the negotiation of a government contract for services. 41 C.F.R. §§ 1-1.302-1(b), 1-3.101(c) (1979). See also 41 C.F.R. § 1-3.802 (1979)
 
 
 [7]
 At the time the district court decided this case, three organizations served as nominated intermediaries in this area: Blue Cross, Aetna Life & Casualty, and Mutual of Omaha Insurance Company. Blue Cross Ass'n v. Califano, supra, 473 F.Supp. at 1054 n.4. Blue Cross currently serves as the nominated intermediary for approximately 244 of the 268 providers in Missouri and metropolitan Kansas City. Id. at 1054. Blue Cross has subcontracted the performance of its intermediary function in these areas to Blue Cross Hospital Services, Inc. of Missouri and Blue Cross of Kansas City respectively. Id. These subcontractors joined Blue Cross in bringing this suit against the Secretary. The district court held, however, that Blue Cross' subcontractors lacked standing to sue the Secretary and granted the Secretary's motion for summary judgment on two counts of Blue Cross' three-count complaint. Id. at 1065, 1076. Neither the subcontractors nor Blue Cross has appealed these rulings
 
 
 [8]
 Shortly thereafter, associations representing Missouri and metropolitan Kansas City health care providers also filed suit against the Secretary. The American Hospital Association was subsequently granted leave to intervene as a plaintiff in this latter suit, pursuant to Fed.R.Civ.P. 24(b). The district court consolidated the two cases and disposed of all claims in its memorandum opinion and judgment. On appeal appellees have submitted a joint brief
 
 
 [9]
 As relevant to this appeal, § 1395h creates two significant statutory rights. First, it gives associations of providers and providers themselves the right to nominate their intermediary. 42 U.S.C. § 1395h(a), (d) (1976 & Supp. II 1978) (the provider nomination provisions). The Secretary, however, need not contract with the intermediary nominated by these associations or providers and instead may assign them to another intermediary, if she determines that such assignment "would result in the more effective and efficient administration of (Medicare Part A)." 42 U.S.C. § 1395h(e)(1) (Supp. II 1978). See also 42 U.S.C. § 1395h(f) (Supp. II 1978)
 In the event that its contract is ultimately awarded to another intermediary, an organization presently under contract with HEW as a nominated intermediary has a right to a hearing, subject to judicial review. 42 U.S.C. § 1395h(e)(3) (A)(ii) (Supp. II 1978) (the intermediary due process provision). See also 42 U.S.C. § 1395h(f), (g) (Supp. II 1978). In addition, both the nominated intermediary and the provider assigned to an intermediary not nominated by it must be given an explanation of the reasons for this assignment. 42 U.S.C. § 1395h(e)(3)(A)(i) (Supp. II 1978).
 
 
 [10]
 See note 9 supra
 
 
 [11]
 The district court also rejected the Secretary's argument that federal procurement regulations required her to solicit offers so as to ensure "full and free competition." 41 C.F.R. § 1-1.302-1(b) (1979). See also note 6 supra. Our reading of the experimental statute makes it unnecessary for us to determine whether the district court correctly interpreted the applicable procurement regulations
 
 
 [12]
 Medicare Part B is a voluntary supplemental program providing for services of doctors and other health care professionals which are not covered by Medicare Part A. See Social Security Act Subchapter XVIII, Part B, 42 U.S.C. §§ 1395j-1395w (1976 & Supp. II 1978). Simply put, a "carrier" is an organization that pays for the cost of health services under policies of insurance. See 42 U.S.C. § 1395u(f) (1976)
 
 
 [13]
 The district court in Health Care had held both that plaintiffs' action challenging the award of the Medicare Part B contract to a noncarrier was untimely, and that the plain language of the experimental statute authorized the Secretary to contract with noncarriers. 466 F.Supp. at 1194-97. While disagreeing with the district court's first holding, the Seventh Circuit adopted the district court's alternative holding on the merits. Appellants in that case moved for rehearing and rehearing en banc partly on the basis of the district court decision in the present case. The Seventh Circuit denied both motions. Health Care Service Corp. v. Califano, supra, 601 F.2d at 934
 
 
 [14]
 The district court in the case before us held that "(t)he most that can be concluded with certainty from (the experimental statute's) listing of entities with whom the Secretary may contract is that the meaning is not plain and that it is unclear whether Congress intended to grant the Secretary authority to ignore the provider nomination of (sic) provisions of 42 U.S.C. § 1395h." Blue Cross Ass'n v. Califano, supra, 473 F.Supp. at 1067. The district court reasoned that because the experimental statute authorized experiments in connection with four Social Security programs (Medicare Part A, Medicare Part B, Medicaid, and Maternity and Child Health), "the language authorizing contracts with generically described entities was employed in recognition of the diverse entities that participate in these four programs." Id. We believe that this unsupported hypothesis provides little basis for ignoring the plain language of the statute. We are persuaded that, had Congress intended to limit the entities with whom or the manner in which the Secretary could contract in any of the four Social Security programs, it could and would have drafted the experimental statute so as to express this intention
 Our examination of the experimental statute's legislative history has revealed nothing to support either the Secretary's or Blue Cross' interpretation. See generally S.Rep.No.92-1230, 92d Cong., 2d Sess. 224-26 (1972); H.Rep.No.92-231, 92d Cong., 2d Sess., reprinted in (1972) U.S.Code Cong. & Admin.News, pp. 4989, 5004, 5066-69, 5290-92. Both parties have adduced more recent legislative materials in support of their positions. These materials are entitled to little weight. Blanchette v. Connecticut General Ins. Corp. (Regional Rail Reorganization Act Cases), 419 U.S. 102, 132, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974). "This is rather a case, in Mr. Justice Frankfurter's phrase, 'for applying the canon of construction of the wag who said, when the legislative history is doubtful, go to the statute.' " Aguayo v. Richardson, 473 F.2d 1090, 1105 (2d Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 101 (1974), quoting Greenwood v. United States, 350 U.S. 366, 374, 76 S.Ct. 410, 414, 100 L.Ed. 412 (1956).
 
 
 [15]
 The first sentence of 42 U.S.C. § 1395b-1(b) (1976) authorizes the Secretary to waive certain statutory requirements relating to reimbursement or payment for designated costs incurred under the experimental statute. The district court inferred that the narrow scope of this waiver provision, as compared with other, broader waiver provisions, e. g., 42 U.S.C. § 1315(a) (Supp. II 1978), manifests a congressional intent to circumscribe the Secretary's authority to waive compliance with statutory requirements such as those contained in the provider nomination provisions. Blue Cross Ass'n v. Califano, supra, 473 F.Supp. at 1067-68. On the contrary, we believe that where, as here, a statute itself plainly authorizes the Secretary to act in derogation of prior statutory provisions, no such congressional intent may be inferred
 
 
 [16]
 For example, 42 U.S.C. § 1395h(c) (1976) provides that the Secretary's contract with the intermediary shall be on a cost reimbursement basis, rather than a fixed price or performance incentive basis
 
 
 [17]
 E. g., United States v. Rutherford, 442 U.S. 544, 553, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979); Miller v. Youakim, 440 U.S. 125, 144, 99 S.Ct. 957, 969, 59 L.Ed.2d 194 (1979); Zenith Radio Corp. v. United States, 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337 (1978); Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969)
 
 
 [18]
 See notes 12 and 13 supra and accompanying text