ST. JOHN'S REGIONAL HEALTH
CENTER, et al., Plaintiffs,

v.

Richard S. SCHWEIKER, et
al., Defendants.

No. 81–3151–CV–S–A.

United States District Court,
W. D. Missouri, S. D.

Aug. 7, 1981.

Frank M. Evans, III, Miller, Sanford, Joyner, Westbrooke & Tyndall, Springfield, Mo., for St. John's Regional Health Center.

Thad C. McCanse, Flanigan & McCanse, Carthage, Mo., for St. John's Regional Medical Center.

Michael A. Jones, Asst. U. S. Atty., Springfield, Mo., Lloyd M. Weinerman, Dept. of HHS, Baltimore, Md., for defendants.

## ORDER

RUSSELL G. CLARK, Chief Judge.

Plaintiffs commenced this action on May 27, 1981 seeking preliminary and permanent injunctive relief. In particular, plaintiffs seek exemption from an experimental Medicare Part A program being conducted in Missouri by defendants. Following an evidentiary hearing held on June 25 and 26, 1981, the parties filed additional suggestions in support of their respective positions. In their additional suggestions plaintiffs requested the Court to determine the propriety of permanent injunctive relief under both counts of their complaint based on the evidence already presented. Having considered carefully the additional suggestions and all relevant evidence, the Court will grant defendants' motion for summary judgment filed on July 15, 1981.

The following facts are undisputed. Plaintiff St. John's Regional Health Center (St. John's, Springfield) is a not-for-profit Missouri corporation with its principal offices located in Springfield, Missouri. Plaintiff St. John's Regional Medical Center (St. John's, Joplin) is a pro forma decree Missouri corporation with its principal offices in Joplin, Missouri. Defendant Schweiker currently is Secretary of the Department of Health and Human Services (HHS), formerly the Department of Health, Education and Welfare (HEW); defendant Davis is Administrator of the Health Care Financing Administration (HCFA); and defendant Hyde is Regional Administrator for HCFA with offices in Kansas City, Missouri. HCFA operates the Medicare Part A program under which participating hospitals receive reimbursement for medical services rendered to individuals covered by the program. Federal jurisdiction arises under 28 U.S.C. §§ 1331, 1346, and 1361.

In 1966 both plaintiffs nominated Blue Cross Hospital Service, Inc. of Missouri (BCHS) to serve as their "intermediary" upon entry into the Medicare program. As such BCHS maintained day to day contact with the plaintiffs, paid claims submitted by plaintiffs for services covered by Medicare, and audited plaintiffs when necessary to determine the proper cost basis for payments relating to covered services. In 1974, however, conflict arose between plaintiffs and BCHS concerning private, non-Medicare insurance benefits. As a result of that dispute, plaintiffs filed an action against BCHS in state court seeking damages and injunctive relief. BCHS responded with a counterclaim naming plaintiffs and Lester E. Cox Medical Center of Springfield, Missouri as defendants. In its counterclaim BCHS alleged that the named defendants conspired with thirteen other hospitals located in southwestern Missouri to raise, fix, and maintain prices charged for hospital-dispensed items and services. BCHS sought treble damages and injunctive relief. Both actions currently are pending in Greene County, Missouri Circuit Court.

In July of 1975 St. John's, Joplin, changed its Medicare intermediary from BCHS to Mutual of Omaha. St. John's, Springfield, followed suit in July of 1976. In February of 1979, however, the Medicare Bureau released a Request for Proposal (RFD) in

Missouri seeking bids for an experimental fixed price intermediary contract. Under this experiment one competitively selected fixed price contractor would act as intermediary in administering the Medicare Part A program in Missouri during a three year period. In May of 1979 the Blue Cross Association, the American Hospital Association, and the Missouri Hospital Association filed a civil action in the United States District Court for the Western District of Missouri seeking to prevent the Secretary of HHS from issuing the fixed price contract. Although the district court permanently enjoined the Secretary's competitive bidding experiment in *Blue Cross Association v. Califano*, 473 F.Supp. 1047 (W.D.Mo. 1979), the Eighth Circuit reversed that order one year later. *See Blue Cross Association v. Harris*, 622 F.2d 972 (8th Cir. 1980). In September of 1980 the Secretary published Addenda and Errata to the original RFP, received bids, and on March 10, 1981 executed a contract with BCHS for the performance of Medicare Part A intermediary duties in Missouri from November 1980 through 1984.

In May, 1981 plaintiffs notified defendant Hyde orally and by letter of their desire to be excluded from the Missouri experiment. Plaintiffs explained that, in their opinion, the ongoing state litigation involving plaintiffs and BCHS constituted a serious conflict of interest as defined in HEW Intermediary Letter No. 70–20, and that this conflict disqualified BCHS from acting as the Medicare intermediary for plaintiffs. In a letter dated May 29, 1981, however, defendant Hyde rejected plaintiffs' request for exemption from the Missouri experiment. Defendant Hyde explained that the existence of non-Medicare litigation did not constitute a conflict of interest sufficient to justify a change of intermediaries, and that plaintiffs' request was contrary to the original purpose of the experiment. Plaintiffs thereafter commenced this two count action seeking permanent injunctive relief.

Plaintiffs rely primarily upon four arguments: (a) that defendants' refusal to exempt plaintiffs from participation in the Medicare Part A experiment in Missouri denies them due process of law; (b) that defendants have failed to follow their own policies and procedures; (c) that defendants' actions have been arbitrary and capricious; and (d) that the Secretary has not complied with the statutory requirements contained in 42 U.S.C. § 1395b–1(b). For the following reasons, the Court finds each of those arguments insufficient to justify permanent injunctive relief.

## A. DUE PROCESS OF LAW

■ Plaintiffs claim that under the Medicare Part A program an intermediary may audit plaintiffs' records, may determine the amount and time of payments to which plaintiffs are entitled, and may conduct hearings in the event of any dispute. Plaintiffs then argue that the Due Process Clause requires defendants to provide an unbiased and impartial intermediary for the performance of these duties, and that the ongoing litigation between plaintiffs and BCHS concerning private insurance coverage constitutes a blatant conflict of interest which disqualifies BCHS from acting as plaintiffs' Medicare Part A intermediary. This Court disagrees.

Under the standard Medicare Part A program, private health insurance organizations serve as intermediaries between provider hospitals and HHS in accordance with non-profit cost reimbursement contracts. *See* Report to the Congress by the Comptroller General, HRD–79–76, pub. June 29, 1979 (plaintiff's deposition Exh. 1). As a result, a *potential* conflict of interest always exists between the public obligations imposed by Medicare and the individual goals and benefits pursued by the intermediaries in their normal business role as private insurance companies. Defendants recognized this potential for conflict and published guidelines to aid in its prevention. Intermediary Letter No. 70–201 published by HEW in April of 1970 listed eight actual or potential conflict of interest situations. Two of those situations are described as follows:

D. A contractor's use of participation in Medicare to establish more profitable insurance premiums or cost care reimbursement than would be realized if the organization were not a Medicare contractor.

E. A contractor's use of official Medicare information to enhance its competitive position in the public or private sectors of their business.

The Intermediary Letter directed all contractor organizations to notify the regional representative of the Bureau of Health Insurance if any of the listed situations occurred. Defendants reaffirmed this position in the experimental contract executed by HHS and BCHS. Article XX subparagraph F provides that:

The Intermediary shall not use its position as a Medicare contractor for purposes of furthering its private business interests or gain, nor shall the Intermediary use any materials or information it obtains from the Secretary or develops in performing its functions under this contract to promote its private business interests.

Consequently, defendants' position regarding conflicts of interest both before and after initiating the fixed cost experimental contract in Missouri has been constant; i.e. no conflict exists unless and until the contractor or any of its employees obtain personal gain from use of the Medicare program or Medicare information. No evidence has been presented tending to show actual use by BCHS of Medicare information or of its position as Part A intermediary to obtain private gain. Without such evidence the Court refuses to find a conflict of interest sufficient to disqualify BCHS from acting as plaintiff's Medicare Part A intermediary.

Plaintiffs nevertheless assert that the allegations made by BCHS in its counterclaim concerning private health insurance benefits combined with allegedly retaliatory actions taken by BCHS against plaintiffs reveal disqualifying bias and prejudice. In response, Mr. Robert Davis, Government Liaison Officer for BCHS, testified that BCHS has established a separate division to handle its Medicare responsibilities and that no exchange of personnel or information occurs between its private and Medicare divisions. Mr. Davis stated further that the initial "desk review" of cost reports submitted by provider hospitals such as plaintiffs has been automated to a large degree, thus eliminating much of the discretion formerly exercised by the intermediary. The only evidence of "retaliatory" action allegedly taken by BCHS involving its Medicare functions was the testimony of Mr. Irvin Donner, vice-president of St. John's, Joplin, to the effect that BCHS conducted a thorough audit of the hospital after it had requested a change of intermediary. No evidence or testimony was presented, however, tending to show that the audit itself was improper or that it resulted in any unjustified denials of Medicare claims. Finally, Mr. Davis testified that BCHS had taken steps to minimize any possibility of bias or prejudice within the internal appeal process by arranging for an exchange of hearing officers with other intermediaries not connected with BCHS. The Court finds that, in light of the evidence presented by both parties and in the absence of an actual conflict of interest, plaintiffs' claims of bias and prejudice are insufficient to establish a denial by defendants of plaintiffs' right to due process of law. See *Chelsea Community Center v. Michigan Blue Cross*, 436 F.Supp. 1050, 1060–61 (E.D.Mich.1977).

## B. DEFENDANTS HAVE FAILED TO FOLLOW ESTABLISHED PROCEDURES

Plaintiffs argue in the alternative that defendants' actions regarding the Missouri experimental Medicare Part A contract are invalid because defendants have failed to comply with their own policies and procedures. Plaintiffs claim specifically that Intermediary Letter No. 70–20 established a policy for handling conflicts of interest involving intermediaries and that this policy requires defendants to terminate the relationship between a provider hospital

and an intermediary if that relationship involves a conflict of interest. Plaintiffs then state that since a conflict of interest currently exists between plaintiffs and BCHS, defendants' refusal to exempt plaintiffs from the experimental program contradicts its general policy and, therefore, is invalid. Plaintiffs' argument fails for two reasons.

First, as explained above, no evidence has been presented tending to show that an actual conflict of interest exists between plaintiffs and BCHS. At most plaintiffs have shown that a mere *potential* conflict of interest exists. Second, Intermediary Letter No. 70–20 merely requires a contractor such as BCHS to report situations of questionable propriety to the BHI regional representative. Plaintiffs reported the status of their relationship with BCHS to the HCFA in letters dated May 11 and 13, 1981. Defendants' refusal to exempt plaintiffs from the experimental program resulted from a determination by defendants that no conflict of interest then existed between plaintiffs and BCHS. See defendant Hyde's letter of May 29, 1981 (defendant's depos. Exhibit 1). Since defendants apparently have followed established policies and practices, the Court refuses to invalidate their decisions.

## C. DEFENDANTS' ACTIONS HAVE BEEN ARBITRARY AND CAPRICIOUS

█ Plaintiffs next argue that defendants acted in an arbitrary and capricious manner by denying plaintiffs' request for an exemption without first conducting an investigation. In their letters to HCFA, however, plaintiffs based their claim to an exemption exclusively upon the non-Medicare related litigation then pending between themselves and BCHS. Consequently, plaintiffs' position then as now rested solely upon an assumed *potential* for bias and prejudice. Plaintiffs' anxiety regarding BCHS and the reasons underlying that anxiety were clearly stated and required no

confirming investigation by defendants. In his letter of May 29, 1981 defendant Hyde acknowledged the existence of active non-Medicare litigation between plaintiffs and BCHS as the basis for the requested exemption. Defendant Hyde did not deny any of the statements made by plaintiffs in support of their request, but merely stated the policy of his department: "The Health Care Financing Administration does not consider litigation to be a conflict of interest nor justification for approval of requests to change intermediaries." (Defendant's depos. Exhibit 1). The Court already has found this position to be consistent with defendants' established guidelines and procedures regarding conflicts of interest. The Court, therefore, refuses to condemn defendants' actions in this case as arbitrary and capricious.

## D. THE EXPERIMENTAL PROGRAM IS INVALID BECAUSE THE SECRETARY HAS FAILED TO COMPLY WITH THE STATUTORY REQUIREMENTS

Plaintiffs make their final argument in Count II of their complaint. 42 U.S.C. § 1395b–1(b) provides as follows:

No experiment or demonstration project shall be engaged in or developed under Section (a) of this section until the secretary obtains the advice and recommendations of specialists who are competent to evaluate the proposed experiment or demonstration project as to the soundness of its objectives, the possibilities of securing productive results, the adequacy of resources to conduct a proposed experiment or demonstration project, and its relationship to other similar experiments and projects already completed or in process.

Plaintiffs argue that the documents relied upon by defendants to meet the requirements of § 1395b–1(b) are insufficient and that, consequently, the Medicare Part A experimental program must be permanently enjoined.

In response to plaintiffs' claims defendants have submitted the affidavit of Mr. Lamont W. Williamson, current Director of the Office of Program Administration, Bureau of Program Operations of HCFA. Mr. Williamson states in his affidavit that he relied upon the following four documents to obtain the requisite advice and recommendations of experts before engaging in the experiment.

A. *Report to the Secretary of Health, Education, and Welfare and the Commissioner of Social Security by the Advisory Committee on Medicare Administration, Contracting and Subcontracting* (known as the Perkins Committee Report) dated June 21, 1974, which initially directed that the experimentation program authorized by the 1972 Amendments to the Social Security Act be utilized.

B. Report to the Administrator of Health Care Financing Administration, Department of Health, Education, and Welfare entitled *Medicare and Medicaid Contracting* dated October 31, 1978, which included as members of the group both HCFA staff and high level individuals from other offices in HEW. After an exhaustive review of the Medicare contracting process, the group made several recommendations including elimination of the nomination process for Part A intermediaries contained in section 1816 of the Social Security Act and selecting and reimbursing intermediaries on a competitive fixed-price or fixed-rate basis.

C. The Comptroller General of the United States in its Report to the Congress dated June 29, 1979, entitled *More Can Be Done to Achieve Greater Efficiency in Contracting for Medicare Claims Processing* recommended that additional consideration be given to fixed-price competitive procurements in Medicare. This report was considered by HCFA in the design and issuance of an amended RFP for best and final offers in September 1980. This GAO report, although not formally released until July, was available to HCFA in draft form in early April of 1979.

D. Shortly before the Eighth Circuit's decision in *Blue Cross Association v. Harris*, 622 F.2d 972 (8th Cir. 1980), the President's Management Improvement Council (PMIC) issued its *Report on Medicare Contracting* dated May 1980 which was also considered by HCFA before issuing the amended RFP for best and final offers and the resultant contract award. In making their recommendations the PMIC report took into account the experience of the Part B fixed-price experiments which were in process at that time in Illinois, Maine and upstate New York.

 Plaintiffs argue that these documents do not meet the requirements of the statute because they do not concern this particular Missouri experiment. The Eighth Circuit, however, recently stated that a district court should accord deference to the statutory interpretations of administrative agencies. *Blue Cross Association*, 622 F.2d at 978. Such deference requires the district court to uphold any reasonable interpretation of a complex statute made by an officer charged with the statute's administration. In this case the Court finds the interpretation of 42 U.S.C. § 1395b–1(b) reached by Mr. Williamson, and his determinations regarding the adequacy of the above cited reports in fulfilling the requirements of that section, to be reasonable. Consequently, plaintiffs are not entitled to a permanent injunction under Count II of their complaint. For the reasons outlined above, it is hereby

ORDERED that defendants' motion for summary judgment is granted.