**BLUE CROSS ASSOCIATION, et al., Plaintiffs-Appellees,**

v.

**Patricia R. HARRIS, et al., Defendants-Appellants,**

and

**WYOMING HOSPITAL ASSOCIATION, et al., Plaintiffs-Appellees,**

v.

**Patricia R. HARRIS, et al., Defendants-Appellants.**

No. 80–1044.

United States Court of Appeals, Tenth Circuit.

Argued March 18, 1981.

Decided Nov. 20, 1981.

Lloyd M. Weinerman, Dept. of Health and Human Services, Baltimore, Md. (Alice Daniel, Asst. Atty. Gen., Civ. Div., Washington, D. C., and Charles E. Graves, U. S. Atty., Cheyenne, Wyo., with him on the brief), for defendants-appellants.

James C. Munson of Kirkland & Ellis, Chicago, Ill. (James D. Adducci and Kath-

leen Kelly Spear of Kirkland & Ellis, Chicago, Ill., and Byron Hirst and Thomas A. Nicholas of Hirst & Applegate, Cheyenne, Wyo., with him on the brief), for plaintiffs-appellees, Blue Cross Association, et al.

Wayne J. Fowler of Saunders, Snyder, Ross & Dickson, P. C., Denver, Colo. (William J. Kirven III, of Saunders, Snyder, Ross & Dickson, P. C., Denver, Colo., B. D. Trierweiler, Franklin D. Bayless, and James H. Barrett of Trierweiler, Bayless, Barrett & McCartney, Cheyenne, Wyo., Merlin O. Baker and Kent H. Murdock of Ray, Quinney & Nebeker, Salt Lake City, Utah; and Richard L. Epstein and Jay H. Hedgepeth, Chicago, Ill., with him on the brief), for plaintiffs-appellees Wyoming Hospital Association, et al.

Before SETH, Chief Judge, and HOLLOWAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

In these consolidated cases, Blue Cross and various hospital associations (plaintiffs) sought a preliminary injunction barring the Secretary of Health, Education and Welfare, now Health and Human Services (HHS), and the administrator of the Health Care Financing Administration (defendants) from seeking competitive bids for administering the Medicare program on an experimental basis in Wyoming, Colorado and Utah. The trial court enjoined defendants from proceeding with the experiment until they had complied with certain conditions that the court found mandated by the relevant statutes. Defendants appeal and we reverse.

The Medicare Act, 42 U.S.C. § 1395 et seq. (the Act), is a comprehensive program of health insurance for the aged and disabled. Part A, section 1395c through section 1395i–2, provides hospital benefits covering inpatient services and posthospital care in skilled nursing facilities. Payments are made from the Government to providers of these services primarily through entities known as "intermediaries," which are nominated by the providers with whom they deal, see § 1395h, and whose function is to administer the program on the local level.

Plaintiffs Blue Cross and its state affiliates[1] were nominated by another plaintiff, American Hospital Association, on behalf of its member organizations to serve as Part A intermediaries for providers of Part A services in Colorado, Utah, and Wyoming. Blue Cross has served in this capacity since the inception of the Medicare program.

Part B of the Medicare Act, section 1395j through section 1395w, is a voluntary supplemental insurance program covering the services of doctors and other health care professionals. It is financed both through premiums paid by enrollees and federal funds. Part B is administered at the local level by "carriers," see § 1395u, which are defined generally by statute as private health insurance companies, see § 1395u(f)(1). Currently the Part B carriers in the three states are Blue Cross and Blue Shield of Colorado, Blue Shield of Utah, and the Equitable Life Insurance Society in Wyoming.

Under Part A and Part B of Medicare, both intermediaries and carriers are paid by the Government on the basis of the reasonable costs they incur in administering the program. 42 U.S.C. §§ 1395h(c), 1395u(c).

Section 1395b–1 of the Act authorizes the Secretary "to develop and engage in experiments and demonstration projects" for several purposes, one of which is to determine whether fixed price or performance incentive contracts would promote more efficient administration of the programs than payment on the basis of cost. Pursuant to this statute, the Secretary issued a Request for Proposal (RFP), seeking competitive offers to administer Parts A and B jointly in the three states at a firm fixed price rather than at administrative costs. The request for potential experimental contractors was not restricted to nominated intermediaries and statutorily defined carriers.

---

1. The affiliates are Blue Cross & Blue Shield of Wyoming, Blue Cross & Blue Shield of Colorado, and Blue Shield of Utah.

The trial court concluded that the proposed project violates specific provisions of the Medicare Act. It found the RFP to be illegal because it contravenes the right of Part A providers to nominate their intermediaries pursuant to section 1395h. Based on the same reasoning, the court also held that the RFP violates section 1395u, which requires that Part B contractors be carriers as defined by that statute. It further concluded that the Secretary violated section 1395b–1(b) because she failed to obtain from competent specialists their advice and recommendations on the proposed experiment prior to issuing the RFP. The court enjoined defendants from executing an agreement pursuant to the RFP until the Secretary obtains the requisite advice from specialists, and makes a good faith attempt to negotiate with all nominated intermediaries and statutory carriers in the three states.

## I.

On appeal, defendants contend that the unambiguous language of the experimental statute does not require the Secretary to comply with the nominated intermediary and statutory carrier provisions in conducting an experiment. Alternatively, defendants contend that even if reasonable minds could differ as to the plain meaning of the statute, the trial court failed to accord the required deference to the Secretary's interpretation. They point out that the case of *Blue Cross Association v. Califano*, 473 F.Supp. 1047 (W.D.Mo.1979), which the trial judge relied on exclusively in reaching his decision, has been subsequently reversed on appeal in *Blue Cross Association v. Harris*, 622 F.2d 972 (8th Cir. 1980). The only other circuit which has considered the issue has also upheld the Secretary's interpretation of her authority under the experimental statute. *See Health Care Service Corp. v. Califano*, 601 F.2d 934 (7th Cir. 1979), *aff'g* 466 F.Supp. 1190 (N.D.Ill.1979).

Where statutory construction is involved, the language of the statute itself is controlling when it is sufficiently clear in context. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). The experimental Medicare statute provides in pertinent part:

"(a)(1) The Secretary of Health, Education, and Welfare is authorized, either directly or through grants to public or nonprofit private agencies, institutions, and organizations or *contracts with public or private agencies, institutions, and organizations*, to develop and engage in experiments and demonstration projects for the following purposes:

" . . .

"(F) to determine whether, and if so which type of fixed price or performance incentive contract would have the effect of inducing to the greatest degree effective, efficient, and economical performance of agencies and organizations making payment under agreements or contracts with the Secretary for health care and services under health programs established by this chapter . . . ."

42 U.S.C. § 1395b–1 (emphasis added). On its face, the statute does not require the Secretary to restrict experimental contracts to nominated intermediaries or statutory carriers. Rather, the Secretary's authority to contract with "public or private agencies, institutions, and organizations," *id.*, is unlimited. Both circuits which have considered the issue have held that the language of the statute clearly and unambiguously vests the Secretary with the authority she seeks to exercise in conducting this experiment. *See Blue Cross Association*, 622 F.2d at 976; *Health Care Service Corp.*, 601 F.2d at 935.

Plaintiffs attempt to avoid application of the plain meaning of the statute by arguing that such a construction would misconstrue its purpose. We disagree. The statute authorizes experiments for the purpose, *inter alia*, of determining whether, and which types of, fixed price contracts would induce the greatest degree of efficient administration of the Medicare program. 42 U.S.C. § 1395b–1(a)(1)(F). This purpose is not frustrated by giving effect to the statutory language that authorizes the Secretary to enter into experimental contracts with enti-

ties other than nominated intermediaries and statutory carriers.

■ Nor are we convinced by plaintiffs' argument that the experimental statute is limited implicitly by those provisions of the Medicare Act which apply to the usual administration of the program. Even assuming that the experimental statute, when read in the context of the entire Medicare Act, is ambiguous as to whether such limitations apply, we must afford "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The Secretary has consistently maintained that her authority under the experimental statute is not subject to other provisions in the Medicare Act. She contends that the construction urged by plaintiffs would totally frustrate and undermine the statute's experimental objectives. On an issue of statutory interpretation such as this one, which calls for agency expertise, the Secretary's construction is to be sustained if it is reasonable. This is so even if the Secretary's interpretation is not the only reasonable one, or the one which this court would have reached de novo. *Id.*

■ Accordingly, we hold that defendants need not comply with provisions of the Medicare Act pertaining to intermediaries and carriers when conducting an experiment pursuant to 42 U.S.C. § 1395b–1.[2]

## II.

The trial court concluded that the Secretary had not complied with section 1395b–1(b). That statute provides in relevant part:

"No experiment or demonstration project shall be engaged in or developed under subsection (a) of this section until the Secretary obtains the advice and recommendations of specialists who are competent to evaluate the proposed experiment or demonstration project as to the soundness of its objectives, the possibilities of

securing productive results, the adequacy of resources to conduct the proposed experiment or demonstration project, and its relationship to other similar experiments and projects already completed or in process."

*Id.* The court found this statutory language to "mandate that advice and recommendations be obtained for the *specific program* sought to be implemented from individuals qualified to comment on the four areas required by the statute." Joint App. at A15 (emphasis added). The court noted that the three documents offered by the Secretary to demonstrate her compliance with section 1395b–1(b) were not made with an eye to the experiment in question, and were therefore not sufficient to satisfy the statute. The court further found the Secretary had not provided satisfactory proof that the individuals who prepared the reports were experts as required by the statute.

■■ On appeal, the Secretary contends that the statute may reasonably be interpreted to require only general advice and recommendations on the type of proposed experiment. She argues that a study of the specific proposed experiment is not mandated by the statute, and that the details of site selection are matters peculiarly within the area of agency expertise. As we pointed out in Part I *supra,* "the interpretation given a statute by the administrative agency charged with the enforcement should be accepted by the courts, if such interpretation be a reasonable one. And this is true even though there may be another interpretation of the statute which is itself equally reasonable." *Brennan v. Occupational Safety & Health Commission,* 513 F.2d 553, 554 (10th Cir. 1975). The Secretary's determination that the statute does not require advice relating specifically to each proposed experiment is reasonable. *See St. John's Regional Health Center v. Schweiker,* No. 81–3151, slip op. at 8 (W.D.Mo. Aug. 7, 1981). Accordingly, it is entitled to deference.

---

**2.** Our holding disposes of plaintiffs' contention on appeal that the Secretary must comply with the intermediary due process provisions of § 1395h.

■ We further hold that the studies offered by the Secretary satisfy the statute. The Report to the Congress by the Comptroller General of the United States, entitled *More Can Be Done to Achieve Greater Efficiency in Contracting for Medicare Claims Processing*, HRD–79–66 (June 29, 1979), Joint App. at A20, specifically recommended that HHS "conduct experiments aimed at evaluating the feasibility of merging Parts A and B of Medicare under a single contractor and whether incentive contracts will work in Medicare; and take immediate action to reduce the number of contractors in the program by eliminating the less efficient performers." *Id.* The study clearly found that the objectives of the type of experiment proposed here are sound. Based on information compiled from various Medicare programs around the country, the study concluded that such experiments would secure productive results. The study relied in part on a report to the Administrator of Health Care Financing Administration (HCFA), prepared by HCFA staff and high-level HHS officials and entitled *Medicare and Medicaid Con-*

*tracting*, which recommended the integration of Parts A and B and reimbursement on a fixed cost basis. *See* Joint App. at A99–A100. The *Report on Medicare Contracting* (April 14, 1980), Reply Brief for Appellants at 20a,[3] undertaken by the President's Management Improvement Council, also recommended that the feasibility of consolidating Parts A and B claims processing be determined. The report discusses the conditions under which a pure fixed price contract would produce optimum results. In conducting its study, the Council met with HCFA staff, reviewed selected records and contracts, and consulted directly with eighteen present and prospective Medicare contractors.[4]

The individuals who prepared these studies were specialists competent to evaluate the proposed experiment within the meaning of section 1395b–1(b). Those involved in the preparation include the Comptroller General and the General Accounting Office, who were under Congressional mandate to study the Medicare claims processing system and recommend modifications to achieve greater efficiency.[5] This is the

---

**3.** We note that this report was completed after the Secretary issued the challenged RFP. However, since the experiment has been held in abeyance pending this litigation, the Secretary will be able to consider the contents of this report before the experiment is actually implemented.

**4.** A subcommittee of the Council met with top-level officials of these eighteen private firms and discussed the following range of issues, which were submitted in advance to the companies:

"—How could an effective market place be developed which would assure vigorous competition for Medicare contracts?
—Do Medicare contracts represent feasible business opportunities?
—What companies would be most interested in submitting proposals for Medicare contracts?
—What changes in contract type, performance standards, penalty provisions, terms, conditions, or administrative requirements might make such contracts more feasible, attractive, and cost effective?
—What criteria and corresponding weights should be used to select contractors?"
*Report on Medicare Contracting* at 3, Reply Brief for Appellants at 27a.

**5.** The Comptroller General was directed as follows:

"The Comptroller General of the United States shall conduct a comprehensive study and review of the administrative structure established for the processing of claims under title XVIII of the Social Security Act, for the purpose of determining whether and to what extent more efficient claims administration under such title could be achieved—
(1) by reducing the number of participating intermediaries and carriers;
(2) by making a single organization responsible for the processing of claims, under both part A and part B of such title, in a particular geographic area;
(3) by providing for the performance of claims processing functions on the basis of a prospective fixed price;
(4) by providing incentive payments for the most efficient organizations; or
(5) by other modifications in such structure and related procedures.
The Comptroller General shall submit to the Congress no later than July 1, 1979, a complete report setting forth the results of such study and review, together with his findings and his recommendations with respect thereto."
Pub.L.No.95–142, § 12, 91 Stat. 1197 (1977).

same objective which the Secretary is authorized to undertake by conducting experiments pursuant to section 1395b–1(a)(1)(F). The specialists in health care and health care financing who prepared the report on Medicare and Medicaid contracting must also be considered qualified experts. The President's Management Improvement Council included selected representatives from federal, state, and local government, private industry, labor organizations, universities, and professional associations. The trial court's finding that the reports were not prepared by specialists competent to evaluate the proposed type of experiment is directly contrary to uncontradicted evidence. In sum, the material cited by the Secretary is more than adequate to satisfy the statutory requirements.

The judgment below restraining the Secretary from proceeding with the proposed experiment is reversed.